EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Evelyn Rodríguez Oquendo<br><br>        Querellante-Peticionaria<br><br>            vs.<br><br>Petrie Retail Inc. D.I.P. y/o<br>Centro Retail Corporation<br>H/N/C Marianne<br>        Querellados<br><br>Urban Brands, Inc.<br>        Recurrida | Certiorari<br><br>2006 TSPR 56<br><br>167 DPR \_\_\_\_ |

Número del Caso: CC-2004-900

Fecha: 11 de abril de 2006

Tribunal de Apelaciones:

                Región Judicial de Ponce

Juez Ponente:

                Hon. Rafael L. Martínez Torres


Abogados de la Parte Peticionaria:

                Lcdo. Martín González Vázquez
                Lcdo. Martín G. González Vélez

Abogados de la Parte Recurrida:

                Lcdo. Carlos Concepción Castro
                Lcdo. Agustín Collazo Mojica



Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Evelyn Rodríguez Oquendo

    Querellante-Peticionaria

        vs.                  CC-2004-900     Certiorari

Petrie Retail Inc. D.I.P. y/o
Centro Retail Corporation
H/N/C Marianne
    Querellados

Urban Brands, Inc.
    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 11 de abril de 2006.

Debemos resolver, *inter alia*, si la venta de activos "libres de gravámenes" (*free of liens*) bajo un procedimiento federal de quiebras exceptúa la aplicación de la **doctrina de patrono sucesor** a una reclamación por despido injustificado.

**I.**

Evelyn Rodríguez Oquendo, en adelante la recurrente o la querellante, fue empleada en un local de las Tiendas Marianne ubicado en el Centro del Sur Shopping Center de Ponce desde el 14 de abril de 1980 hasta el 5 de octubre de 1998 cuando fue despedida. Al momento de su despido fungía como Asistente de

Gerente. Según las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, ésta fue sustituida en su empleo por una mujer de menor edad que ella.

El 29 de septiembre de 1999, la querellante presentó una reclamación laboral contra la corporación dueña de las Tiendas Marianne en Puerto Rico, Petrie Retail Inc., en adelante Petrie.[1] Alegó que fue despedida de su empleo sin mediar justa causa y que se le discriminó por razón de su edad.

El emplazamiento correspondiente fue expedido el 5 de octubre de 1999 a nombre de Petrie y fue diligenciado el 15 del mismo mes a través de Maritza Ruiz Vélez, Gerente de la sucursal de Marianne en el Centro del Sur Shopping Center. Según reconoció en su testimonio, luego de recibir el emplazamiento dicha Gerente llamó inmediatamente a las oficinas centrales de las Tiendas Marianne y les hizo llegar los documentos aludidos.

Petrie no compareció al juicio y a petición de la querellante, el 25 de mayo de 2000 se le anotó la rebeldía. Celebrado el juicio, el Tribunal de Primera Instancia, Sala Superior de Ponce, dictó una sentencia en rebeldía. Dicho foro declaró con lugar la querella y condenó a Petrie a pagar a la querellante la suma de $11,204.67 como penalidad por el despido injustificado, a tenor con la Ley 80 del 30

---

[1] La querellante incluyó además a *Centro Apparel Corporation* porque, según surge de los comprobantes de retención del Departamento de Hacienda  y los talonarios de cheques que constan en el record, en ocasiones el patrono se identificaba como dicha entidad.

de mayo de 1976,[2] más $30,000.00 como penalidad por el discrimen por razón de edad. El 7 de junio de 2001 se archivó en autos una copia de la notificación de la sentencia aludida; y el 13 de marzo de 2002, la querellante solicitó al Tribunal de Primera Instancia que ordenara la ejecución de dicha sentencia. La orden de ejecución de sentencia fue expedida el 16 de septiembre de 2002. En ésta, el tribunal ordenó el embargo de dos (2) cuentas bancarias según solicitado.

El 23 de octubre de 2002, Urban Brands, Inc., en adelante Urban o la recurrida, compareció ante el Tribunal de Primera Instancia sin someterse a su jurisdicción, para solicitar que se dejara sin efecto el embargo referido y que se paralizara la ejecución de la sentencia. La recurrida alegó ser la dueña de la cuenta embargada[3]. Alegó así mismo que había comprado a Petrie los activos de las Tiendas Marianne, como parte de un proceso en el Tribunal Federal de Quiebras para el Distrito Sur de New York, sin asumir ningún tipo de deudas de dicha corporación. Sostuvo Urban, que la referida transacción fue *libre de gravámenes* ("free of liens"). Alegó además que el emplazamiento en cuestión era insuficiente por estar dirigido a Petrie. Por último, la recurrida argumentó que aunque el emplazamiento hubiese

---

[2] 29 LPRA § 185 y ss.

[3] Una de las cuentas está en el Scotiabank de Puerto Rico y la otra en el Banco Popular de Puerto Rico. Los fondos de ésta última no fueron embargados porque el número de cuenta que aparecía en la orden de embargo era incorrecto.

estado bien diligenciado, la sentencia le fue notificada a Petrie -no a Urban- por lo que no era final y firme y no procedía su ejecución.

La querellante-recurrente desconocía que, como parte del proceso de quiebras, Petrie había transferido sus activos de las Tiendas Marianne a la recurrida Urban, diez meses antes del emplazamiento -o sea dos meses después del despido.

Así las cosas, el Tribunal de Primera Instancia celebró una serie de vistas para determinar si procedía dejar sin efecto el embargo y la ejecución de la sentencia en cuestión. Durante dichas vistas, a las que Urban compareció aún sin someterse a la jurisdicción del tribunal, ambas partes presentaron prueba y argumentos a su favor. El foro de instancia dictó una resolución el 16 de enero de 2004 mediante la cual determinó que Urban era un patrono sucesor de Petrie. Por consiguiente, declaró sin lugar la moción solicitando que se dejara sin efecto el embargo y la paralización de la ejecución de la sentencia.

Inconforme con dicho dictamen, Urban presento ante el Tribunal de Apelaciones un escrito titulado "Apelación Civil" y argumentó, en síntesis, que había errado el Tribunal de Primera Instancia al: (1) determinar que Urban había sido debidamente emplazada; (2) determinar que Urban era patrono sucesor de Petrie; y (3) autorizar el retiro de los fondos consignados en ejecución de la sentencia sin que la misma fuese final y firme.

El Tribunal de Apelaciones acogió el referido escrito de Urban como uno de *certiorari* y revocó el dictamen del foro de instancia mediante una sentencia de 4 de junio de 2004. Dicho tribunal estimó favorablemente los planteamientos de la parte aquí recurrida en cuanto a que: (a) la adquisición de activos libre de gravámenes como parte de un proceso de quiebras impedía la aplicación de la doctrina de patrono sucesor; y (b) aun si no hubiese habido impedimento para aplicar la referida doctrina, la prueba presentada había sido insuficiente para demostrar que ésta debía aplicarse en el caso en cuestión. El foro intermedio también resolvió que Urban no fue debidamente emplazada por lo que el tribunal nunca adquirió jurisdicción sobre ésta.[4]

La querellante Rodríguez Oquendo presentó ante el foro apelativo una moción de reconsideración la cual fue denegada mediante una resolución notificada el 3 de septiembre de 2004. Inconforme con el dictamen del Tribunal de Apelaciones, la querellante recurrió ante nos oportunamente. Adujo, en síntesis, que había errado el foro apelativo al revocar la resolución dictada por el Tribunal de Primera Instancia, debido a que Urban respondía por el despido discriminatorio bajo la doctrina de patrono sucesor. La recurrente argumentó además que Urban fue emplazada conforme a derecho y que la sentencia fue debidamente notificada.

---

[4] En su sentencia, el Tribunal de Apelaciones no discutió el planteamiento de Urban en cuanto a que la sentencia no le fue notificada a ella, sino a Petrie.

El 21 de enero de 2005 expedimos el auto de *certitorari*. El 18 de marzo de 2005, luego de solicitar y obtener un término adicional, la parte peticionaria presentó un alegato en apoyo a su solicitud de *certiorari*. La parte recurrida, después de solicitar una prórroga que también concedimos, presentó su alegato el 25 de abril del 2005. Estando en posición de resolver, procedemos a hacerlo.

## II.

### A.

La **doctrina del patrono sucesor** se incorporó jurisprudencialmente a nuestro ordenamiento hace ya cuatro décadas, procedente del derecho común estadounidense, para atender situaciones en que una operación comercial cambia de dueño y es preciso determinar los derechos de los empleados frente al nuevo patrono. Cuando la referida doctrina aplica, se entiende que un patrono que sustituye a otro por transferencia de activos o fusión corporativa asume las obligaciones contraídas por el anterior. Piñeiro v. Int'l Air Serv. of P.R., Inc., 140 D.P.R. 343 (1996); Bruno López v. Motorplan, Inc. y otros, 134 D.P.R. 111 (1993), J.R.T. v. Asoc. C. Playa Azul I, 117 D.P.R. 20 (1986); J.R.T. v. Coop. Azucarera, 98 D.P.R. 314 (1970); J.R.T. v. Club Náutico, 97 D.P.R. 386 (1969). La adopción y el desarrollo de esta doctrina responde a "la necesidad de establecer un equilibrio entre el derecho del empresario a 'organizar independientemente su actividad económica' y la necesidad de

reconocer 'alguna protección a los empleados por el cambio súbito en la relación obrero-patronal'". J.R.T. v. Coop. Azucarera, *supra*, pág. 325 (citando de Wiley & Sons v. Livingston, 376 U.S. 543 [1964]).

El desarrollo original de la doctrina del patrono sucesor ocurrió en el Tribunal Supremo de Estados Unidos y otros foros federales en los que la misma es llamada "responsabilidad del sucesor" (*sucesor liability*). Inicialmente, la doctrina se limitaba a la puesta en vigor de convenios colectivos laborales, particularmente en cuanto a disposiciones para arbitraje. John Wiley & Sons v. Livington, *supra*; United Steel Workers of Amer. v. Reliance Univ. Inc., 335 F2d. 891 (3er Cir. 1964); Wackenhut Corp. v. International U., United Plant Guard W., 332 F.2d 954 (9no Cir. 1964). De igual manera, en Puerto Rico incorporamos inicialmente la referida doctrina para resolver controversias respecto a convenios colectivos y prácticas ilícitas del trabajo. J.R.T. v. Asoc. C. Playa Azul I, *supra*; J.R.T. v. Coop. Azucarera, *supra*; J.R.T. v. Club Náutico, *supra*. Véase además: D. Fernández y C. Romany, Derecho Laboral: Casos y Materiales, Río Piedras, Ed. U.P.R., 1987, T. 2, págs. 1265-1324.

Posteriormente, los tribunales federales extendieron el alcance de la doctrina del patrono sucesor a controversias por despidos discriminatorios bajo la legislación social protectora del trabajo. E.E.O.C. v. Vucitech, 842 F.2d 936 (7mo Cir. 1988); Bates v. Pacific Maritime Ass'n, 744 F.2d

703 (9no Cir. 1984); In re Nacional Airlines, Inc., 700 F.2d 695 (11mo Cir. 1983); Equal Emp. Op. Com'n v. MacMillan Bloedel Container, 503 F.2d 1086 (6to Cir. 1974). Esta ampliación de la doctrina se justificó afirmando que la política pública contra el despido discriminatorio de trabajadores tenía una importancia similar a la política pública sobre el derecho a la negociación colectiva y la prohibición de las prácticas ilícitas del trabajo.

Por nuestra parte, en Bruno López v. Motorplan, Inc., supra, resolvimos que en nuestra jurisdicción la doctrina del patrono sucesor se extiende a reclamaciones por despido discriminatorio, las cuales ostentan un rango superior en nuestro ordenamiento, estando dicho discrimen prohibido tanto constitucional como estatutariamente. Así, en Piñeiro v. Int'l Air Serv. of P.R., Inc., supra, pág. 349, explicamos que "hemos ampliado la doctrina del patrono sucesor en auxilio de la responsabilidad judicial de darle vigencia en casos concretos a importantes políticas públicas en el campo laboral, conforme a nuestra realidad económica, social y cultural".

Desde que incorporamos la referida doctrina hemos reconocido que "[l]os factores que se han considerado para responsabilizar a una entidad por las prácticas ilícitas cometidas por otra son variados". J.R.T. v. Club Náutico, supra, pág. 400. Como mínimo, se requiere una similitud sustancial "en la operación y una continuidad en la identidad de la empresa antes y después del cambio para que

se estime que el nuevo patrono deberá asumir obligaciones contraídas por el anterior". J.R.T. v. Coop. Azucarera, *supra*, pág. 322. En esta última opinión citada, determinamos que la Cooperativa Azucarera Central Juncos era patrono sucesor de una compañía que había pactado un convenio colectivo con la asociación de Azucareros Profesionales, y como tal, asumió las obligaciones surgidas de dicho convenio. Al así resolver, señalamos que la concurrencia de un número suficiente de los siguientes factores resultaba determinante para atribuirle al nuevo patrono la continuidad de las obligaciones del anterior:

> (1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta para las operaciones; (3) el empleo de la misma o sustancialmente la misma fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre; y (8) la operación del negocio durante el período de transición. *Id*, págs. 323-325. (Citas omitidas).

Posteriormente, en Bruno López v. Motorplan, *supra*, pág. 122, consideramos de nuevo la jurisprudencia federal y señalamos que para determinar si existe responsabilidad de patrono sucesor es necesario sopesar varias cuestiones, entre las cuales destacan:

> (1) si el nuevo patrono conocía de antemano la reclamación del empleado contra su predecesor; (2) la relativa capacidad de cada uno de los patronos para satisfacer adecuadamente la reclamación del empleado, de ser ésta válida; y (3) el beneficio que haya podido o puedan derivar respectivamente

cada uno de los patronos por la acción que se impugna.

Estos tres factores, al igual que los señalados en J.R.T. v. Coop. Azucarera, *supra*, tienen que ser ponderados al evaluar una controversia en la cual se plantea una posible responsabilidad de patrono sucesor, pero ninguno de ellos es de por sí determinante. Por ejemplo, en Piñeiro v. Int'l Air Serv. of P.R., Inc., *supra*, no hubo prueba de que el patrono sucesor tuviera de antemano conocimiento de las reclamaciones de los empleados, pero aún así le impusimos responsabilidad "en un justo balance de los intereses involucrados", considerando "la clara continuidad en la identidad entre ambas empresas, la simi[litud] en la operación del negocio, así como la política pública de proveer protección a los trabajadores en casos de despidos injustificados. Sobre todo cuando en estos casos los empleados de otro modo estarían incapacitados de obtener un remedio". *Id.*, pág. 353. Como vemos, lo que se busca es determinar si, ante determinados hechos, concurren una cantidad suficiente de los factores señalados por nuestros precedentes como importantes para reconocer una situación de patrono sucesor.

**B.**

Como señalamos anteriormente, en el caso de autos el Tribunal de Primera Instancia entendió probado que la querellante había sido discriminada por razón de su edad y

que fue despedida sin justa causa. Además, determinó que procedía imponer responsabilidad a Urban por dicho despido discriminatorio bajo nuestra doctrina del patrono sucesor. Por su parte, el Tribunal de Apelaciones revocó la determinación del foro de instancia al concluir que en el caso de autos no estaba presente ninguno de los requisitos que generalmente se han requerido para aplicar la doctrina de "responsabilidad del sucesor" según elaborada en el derecho común norteamericano.

A pesar de que el foro apelativo reconoció que la referida doctrina estaba sujeta a la ley estatal y variaba de estado a estado, la realidad es que ignoró por completo los casos, antes citados, en que este Tribunal ha discutido detalladamente la doctrina del patrono sucesor, según se ha aplicado ésta en nuestra jurisdicción. Dicho foro evaluó cuatro factores que han sido considerados por tribunales federales como excepciones a la norma general de que cuando una compañía vende sus activos a otra, la adquirente no responde de las obligaciones de la primera.[5] Sin embargo, obvió los factores, antes citados, que fueron destacados por este Tribunal en J.R.T. v. Coop. Azucarera y Bruno López v. Motorplan, *supra*, para establecer que un patrono sucesor

---

[5] A saber: (1) el comprador de la empresa (nuevo patrono) expresa o implícitamente asume la obligación de responder ante los trabajadores; (2) la transacción realizada es una fusión o unión (*merger*) de los negocios; (3) el comprador es una mera continuación del vendedor; o (4) la transacción se realiza de forma fraudulenta para evitar responsabilidad. Fletcher Cyclopedia of the Law of Private Corporations, West Group, 1999, Vol. 15, § 7122, pág. 249.

tiene que responder ante los obreros por obligaciones del patrono anterior.

No insinuamos que sea impropio para nuestros tribunales evaluar los factores considerados en el derecho común norteamericano para determinar si existe "responsabilidad del sucesor", cuando ello sea pertinente. Pero no pueden, como sucedió en el caso de autos, ignorar por completo nuestros propios precedentes en cuanto a una doctrina adoptada en nuestra jurisdicción desde los años sesenta.

Por su parte el Tribunal de Primera Instancia, al determinar que Urban era un patrono sucesor que debía responder ante la querellante, hizo un esfuerzo por aplicar los factores señalados en J.R.T. v. Coop. Azucarera, *supra*, y determinó que "[p]ara todos los efectos prácticos la Tienda Marianne… sigue en el mismo lugar; con los mismos empleados; con el mismo género de negocios; y con la misma identidad comercial pública".[6]

---

[6] Específicamente, el T.P.I. llegó a las siguientes conclusiones de hechos:

(1) que la sucursal de las Tiendas Marianne en el Centro del Sur Shopping Center, donde se emplazó a Urban, era y es la misma que hoy en día ella mantiene; (2) que en esa sucursal fue que la querellante laboró por muchos años para las Tiendas Marianne; (3) que en la actualidad Urban mantiene esa misma sucursal con el mismo nombre, con el mismo concepto de venta de ropa de mujer y en el lugar exacto y espacio físico del centro comercial; (4) que en esa misma tienda, así como en las demás Tiendas Marianne de… Puerto Rico Urban no ha variado el tipo de negocio, y lo dedica a la venta de ropa de mujer como se hacía cuando la querellante trabajaba para Tiendas Marianne bajo el anterior dueño; (5) que Urban mantiene el mismo diseño de tienda que el anterior

Aunque el Tribunal de Apelaciones resolvió que no procedía imponer responsabilidad a la parte aquí recurrida considerando factores que se han asociado a la doctrina de derecho común sobre "responsabilidad del sucesor", *supra*, nota 5, también confirió gran importancia al planteamiento de Urban en cuanto a que la venta de activos bajo un procedimiento de quiebras impedía la aplicación de la doctrina de patrono sucesor. Un estudio ponderado del tema revela que falló el foro apelativo al plasmar en su sentencia un análisis limitado de la jurisprudencia federal pertinente. Veamos.

Sin duda existe una línea de casos que han resuelto que una venta de activos aprobada por un Tribunal Federal de Quiebras catalogada como "libre de toda reclamación", excluye la aplicación de la doctrina de responsabilidad del sucesor contra el comprador de dichos activos. In re All American of Ashburn, Inc. v. Bonapfel, 56 B.R. 186 (1986); Rubinstein v. Alaska Pacific Consortium, 19 B.R. 323 (1982); Forde v. Kee-Lox Manufacturing Co., Inc. (1977). Algunos tribunales de quiebras han tratado de "prohibir" (*enjoin*) reclamaciones que interferirían no sólo con la venta de

---

patrono; (6) que utiliza la misma caja registradora; (7) que Urban mantiene sustancialmente el mismo personal; (8) que [U]rban mantiene la cuenta bancaria en el mismo banco que el anterior patrono; (9) que mantiene el mismo diseño o distribución física de la tienda, los mismos colores, el mismo logo y el mismo rótulo[,] que el patrono anterior cuando la querellante trabajaba para éste. (Enfasis omitidos). Resolución del T.P.I. Sala Superior de Ponce, de 16 de enero de 2004, págs. 6-7.

activos, sino incluso con el disfrute de los mismos por el comprador. Collier Bankruptcy Manual, 3ra Ed. 2002, ¶ 363.02[3], pág. 363-10.

No obstante, otra línea jurisprudencial federal de mayor peso ha cuestionado la autoridad de los tribunales de quiebras para detener la aplicación de las doctrinas de responsabilidad del sucesor según elaboradas por los foros judiciales estatales. *Id.* Así pues, el Tribunal de Apelaciones para el Primer Circuito federal ha resuelto que la notificación inadecuada a un reclamante de la existencia de un proceso en el tribunal de quiebras puede impedir que este último foro emita un interdicto contra reclamaciones futuras. Western Auto Supply Co. v. Savage Arms, Inc., 43 F.3d 714 (1er Cir. 1994). El Tribunal del Séptimo Circuito federal ha ido más lejos al sugerir que los tribunales de quiebras carecen de jurisdicción para interferir con reclamaciones bajo la "responsabilidad del sucesor". Zerand-Bernal Group, Inc. v. Cox, 23 f.3d 159 (7mo Cir. 1994). Cabe mencionar que la jurisprudencia en la que se basa la sentencia del foro apelativo es de tribunales de quiebras y tribunales federales de primera instancia, mientras que en la otra línea de casos federales aquí resaltada destacan opiniones de distintos tribunales apelativos federales.

En términos generales, las decisiones judiciales federales en que se ha resuelto que la venta de activos "libre de toda reclamación" aprobada por un tribunal de quiebras excluye la aplicación de la doctrina de

responsabilidad del sucesor han adelantado dos razones principales para llegar a ese resultado, a saber: (1) que si luego de una venta realizada bajo un proceso de quiebra se permite un pleito basado en la doctrina de responsabilidad del sucesor, el demandante recibiría prioridad sobre las reclamaciones que serían pagadas conforme al Código Federal de Quiebras y por ende se modificaría el esquema de prioridades establecido por dicho Código; y (2) que la implementación de la doctrina de responsabilidad del sucesor tendría un impacto negativo en la facultad del fideicomisario de vender los activos del caudal a un precio justo. In re All American; Rubinstein v. Alaska Pacific; y Forde v. Kee-Lox, *supra*. Al rechazar estos argumentos el Tribunal del Séptimo Circuito federal, por voz del Juez Presidente Posner, ha explicado lo siguiente:

> All this is true, but proves too much. It implies, what no one believes, *In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989), that by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price: more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt; in effect, that it could discharge the debts of nondebtors... as well as of debtors even if the creditors did not consent; that it could allow the parties to bankruptcy sales to extinguish the rights of third parties... without notice to them or (as notice might well be infeasible) any consideration of their interest. If the [bankruptcy] court could do all these nice things the result would indeed be to make the property of bankrupts more valuable than other property -more valuable to the creditors, of course, but also to the debtor's shareholders and managers to the extent that the strategic position of the debtor in possession in a reorganization

enables the debtor's owners and managers to benefit from bankruptcy. But the result would not only be harm to third parties... but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purpose of bankruptcy law. <u>Zerand-Bernal Group</u>, *supra*, pág. 163.

La vertiente jurisprudencial que rehúsa reconocer una limitación a la aplicación de las diferentes doctrinas de responsabilidad del sucesor por el mero hecho de que la venta de activos se dio en el contexto de un proceso de quiebras, no sólo es cónsona con "importantes políticas públicas en el campo laboral, conforme a nuestra realidad económica, social y cultural", <u>Piñeiro v. Int'l Air Serv. of P.R., Inc.</u>, *supra*, sino que disfruta de un mayor respaldo de la jurisprudencia federal y la doctrina en el campo de quiebras. Así, una reconocida autoridad en la materia señala lo siguiente: "Sucesor liability is a nonbankruptcy state law issue, and bankruptcy should not change the result that would otherwise obtain under nonbankruptcy law." <u>Collier Bankruptcy Manual</u>, *supra*, pág. 363-11. Véase además: M.H. Reed, <u>Sucesor Liability and Bankruptcy Sales</u>, 51 Bus. Law. 653 (1996).

Resolvemos por ende que **la venta de activos bajo un procedimiento federal de quiebras, aunque sea libre de gravámenes (*free of liens*), *no* es impedimento para la aplicación de la doctrina de patrono sucesor según desarrollada por nuestros precedentes**.

C.

Reiteradamente hemos señalado que como norma general, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de instancia. Torres Ortiz v. Pla, 123 D.P.R. 637 (1989); Ex parte Valencia, 116 D.P.R. 909 (1986); Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982). No estamos en posición de cuestionar las determinaciones del Tribunal de Primera Instancia en cuanto a que la querellante fue discriminada por razón de edad y despedida injustificadamente, pero sí nos corresponde evaluar si el caso de autos es uno apropiado para resolver mediante la doctrina de patrono sucesor según esbozada por nuestra jurisprudencia.

Al aplicar al presente caso los factores señalados en J.R.T. v. Coop. Azucarera, 98 D.P.R. 314 y reafirmados en Piñeiro v. Int'l Air Serv. of P.R., Inc., 140 D.P.R. 343, el foro de instancia concluyó, *inter alia,* que "la Tienda Marianne... sigue en el mismo lugar; con los mismos empleados; con el mismo género de negocios; y con la misma identidad comercial pública" que cuando fue despedida la querellante, y procedió a responsabilizar a Urban por las obligaciones de Petrie ante ésta.

En contra de la imposición de responsabilidad conforme a la doctrina de patrono sucesor pesa el que, al parecer, al momento de adquirir los activos de las Tiendas Marianne, Urban no conocía la causa de acción de la querellante contra Petrie. De hecho, la reclamación no había sido instada aún

al momento de la transacción.  Sin embargo, ya hemos señalado que ninguno de los factores a considerar para determinar si existe responsabilidad de patrono sucesor es de por sí determinante.  Incluso, en el último caso en que discutimos la referida doctrina, impusimos responsabilidad a pesar de que no hubo prueba en torno a que el patrono adquiriente de la compañía tuviera conocimiento de antemano de las reclamaciones de los empleados. Piñeiro v. Int´l Air Serv. of P.R., Inc., *supra*.

En el caso de autos un examen del récord refleja que **la querellante no tuvo conocimiento de la transferencia de los activos de las Tiendas Marianne a Urban** hasta que dicha corporación compareció ante el foro de instancia a cuestionar el embargo y la ejecución de la sentencia. Resulta claro que a la querellante no se le proveyó una oportunidad de hacer valer su reclamo contra Petrie en el proceso de quiebras.  Además, todo tiende a indicar que **la estructura corporativa del patrono era desconocida para la querellante.**  Surge de las copias de comprobantes de retención del Departamento de Hacienda provistas por la querellante que durante sus años de trabajo en Marianne los pagos fueron hechos por distintas personas jurídicas, dificultando así que la trabajadora agraviada determinara quién, en realidad, era su patrono.

Por lo tanto, "en un justo balance de los intereses involucrados", y considerando "la clara continuidad en la identidad entre ambas empresas, la simi[litud] en la

operación del negocio, así como la política pública de proveer protección a los trabajadores en casos de despidos injustificados" y el hecho, pertinente en estos casos, de que la empleada "de otro modo estarí[a] incapacita[da] de obtener un remedio", Piñeiro v. Int´l Air Serv. of P.R., Inc., *supra*, pág. 353, resolvemos que **actuó correctamente el Tribunal de Primera Instancia al imponer responsabilidad a la recurrida Urban como patrono sucesor de Petrie**.

### III.

Finalmente, consideramos los planteamientos de la parte recurrida Urban en cuanto a que: (1) hubo insuficiencia del emplazamiento ya que el mismo estaba dirigido a Petrie, el antiguo patrono de la querellante; y (2) aunque el emplazamiento hubiese estado bien diligenciado, la sentencia no había sido debidamente notificada, por lo que no era final y firme y no procedía su ejecución.

De entrada debemos señalar que, a pesar de que la recurrida Urban ha indicado que compareció ante el Tribunal de Primera Instancia sin someterse a su jurisdicción para cuestionar el emplazamiento y la notificación de la sentencia, es claro que en sus comparecencias orales y escritas presentó argumentos en los méritos en cuanto a la suficiencia de la prueba presentada por la recurrente.[7] Por lo tanto, entendemos que la recurrida Urban se sometió tácitamente a la jurisdicción del foro de instancia y

---

[7] Argumentos que son reproducidos y desarrollados en su comparecencia ante nos.

renunció a su planteamiento sobre insuficiencia del emplazamiento. Véase, <u>Vázquez Ortiz v. López Hernández</u>, Op. de 25 de noviembre de 2003, 160 D.P.R. ___ (2003), 2003 JTS 174, 2003 TSPR 173; y <u>Qume Caribe, Inc. v. Srio. de Hacienda</u>, Op. de 30 de marzo de 2001, 153 D.P.R. ___ (2001), 2001 JTS 41, 2001 TSPR 38. En vista de ello, no tenemos que resolver si el hecho de que se le imponga responsabilidad como patrono sucesor a una entidad comercial que sustituye a otra mediante compra de activos, implica que un emplazamiento expedido a nombre del patrono predecesor es suficiente para adquirir jurisdicción sobre el sucesor.

Por último, argumenta Urban que la sentencia emitida por el foro de instancia no le fue debidamente notificada porque la dirección a la que se envió, a saber; **150 Meadowlands Parkway, Seacuse, NJ 07094**, no es la suya. Sin embargo, de ser eso así, no nos explicamos por qué Urban no refuta el argumento de la querellante en cuanto a que de los documentos presentes en el record relacionados a la cuenta bancaria embargada en el Scotiabank (y reclamada por la recurrida), registrada a nombre de Marianne USPR, Inc. DBA Marianne/Marianne Plus, surge que la dirección de su titular es: Urban Brands, Inc. Marianne Division **150 Meadowlands Parkway, Seacuse, NJ 07094.** Siendo esto así, tenemos que concluir que, no tan solo la recurrida Urban fue notificada de la sentencia en contra de Petrie de la cual responde en virtud de la doctrina del patrono sucesor según discutido

anteriormente, sino que además su alegación en contrario no tiene méritos.

En consecuencia procede que se revoque el dictamen de 4 de junio de 2004 del Tribunal de Apelaciones y que se confirman las órdenes de embargo y ejecución de sentencia emitidas por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad con lo resuelto aquí.

Jaime B. Fuster Berlingeri
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Evelyn Rodríguez Oquendo

   Querellante-Peticionaria

      vs.                         CC-2004-900
    Certiorari

Petrie Retail Inc. D.I.P. y/o
Centro Retail Corporation
H/N/C Marianne
   Querellados

Urban Brands, Inc.
   Recurrida


SENTENCIA


San Juan, Puerto Rico, a 11 de abril de 2006.


     Por las razones expuestas en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen de 4 de junio de 2004 del Tribunal de Apelaciones y se confirman las órdenes de embargo y ejecución de sentencia emitidas por el Tribunal de Primera Instancia.

     Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.


                        Aida Ileana Oquendo Graulau
                      Secretaria del Tribunal Supremo