Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| AIDA E. BERMÚDEZ RAMOS Y OTROS<br><br>Recurrido<br><br>V.<br><br>METRO CAGUAS INCORPORATED<br><br>Peticionarios | KLCE202500292 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV2389<br><br>Sobre: Despido Injustificado Procedimiento Sumario (Ley Núm. 80) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de mayo de 2025.

Comparece ante nosotros Metro Caguas Incorporated, en adelante, el peticionario o Metro. Mediante su recurso nos pide la revocación de una resolución interlocutoria emitida por el Tribunal de Primera Instancia (TPI) como parte de una reclamación civil por Despido Injustificado al amparo del proceso sumario establecido mediante la Ley Núm. 2 de 17 de octubre de 1961. Los hechos esenciales para comprender nuestra determinación se explican a continuación.

I

Aida E. Bermúdez Ramos, Alice M. López Acevedo, Carlos N. Galarza Hernández, Caroline M. Camacho Landrón, Grissel Muñoz Rodríguez, Jungy Núñez Rivera, María del C. Mora González, Marisol Castro Goyco, Nitza Ivette Díaz Carrión, Sandra I. Rodríguez Colón y Vanessa Contreras Roldán en adelante los querellantes, eran todos empleados del hospital que el Grupo HIMA San Pablo operaba en el Municipio de Caguas. El 14 de agosto de 2023, todas las

corporaciones que componen el grupo HIMA, incluyendo Grupo HIMA San Pablo, Inc., se acogieron al Capítulo 11 de la Ley Federal de Quiebras, 11 USCA §101 *et seq.* Conforme el Capítulo 11 el hospital HIMA San Pablo Caguas continuó operando de forma ininterrumpida aun en quiebra. Alrededor del 14 de noviembre de 2023, Metro compró los activos del hospital y continuaron operando de forma ininterrumpida.

El 5 de febrero de 2024 los querellantes fueron despedidos por Metro, alegan estos que sin justa causa. Por tal razón reclamaron que conforme el Artículo 6 de la Ley Número 80 del 30 de mayo de 1076, Ley de Despido Injustificado, 29 L.P.R.A. § 185f, cuando el adquirente de un negocio, como METRO, opta por retener los servicios de todos o algunos de los empleados y advenga en consecuencia patrono de éstos, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños para efectos del pago de la mesada, en caso de que los empleados sean despedidos de forma injustificada por el adquirente. Conforme dicho razonamiento, reclamaron el pago de la mesada tomando en consideración los años que trabajaron para el HIMA San Pablo y Hospital San Rafael.

Por su parte, Metro presentó una Moción de Desestimación por falta de jurisdicción que fue declarada no ha lugar por el TPI apoyándose en la decisión de *Rodríguez v. Urban Brands*, 167 DPR 509 (2006).

Sobre la jurisdicción del foro recurrido, Metro afirma que en virtud de la Sección 363 del Código de Quiebras Federal, y el Sale Order el Tribunal Federal de Quiebras (TFQ) retuvo la jurisdicción exclusiva para atender asuntos como el que nos ocupa, por lo que el TPI adolece de autoridad para actuar por carecer de jurisdicción sobre la materia y competencia para interpretar y adjudicar las reclamaciones o causas de acción invocadas por los querellantes ya

que la jurisdicción del TFQ se extiende a los procesos civiles que se relacionen con la quiebra.

Aunque reconoce que como norma general las resoluciones interlocutorias en procesos sumarios no son revisables por este foro distingue las ocasiones, como esta, donde según razona este foro si ostenta jurisdicción para revisar resoluciones interlocutorias, entre otras, "en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso -o su pronta disposición- en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una grave injusticia". Citando a *Dávila Rivera v. Antilles Shipping Inc.*, 147 DPR 483, 498 (1999).

Metro señala que erró el TPI al declarar sin lugar su Moción de Desestimación, asumiendo así jurisdicción para atender la controversia de autos aun cuando el campo está ocupado por el Tribunal de Quiebras Federal. Puntualiza que de los documentos que acompaña con su recurso surge claramente que el Sale Order emitido por el TFQ, rotundamente establece que la compraventa de los activos de HIMA en favor de Metro Caguas, fue una libre de cargas y gravámenes. Afirma que adquirió los activos del quebrado HIMA San Pablo bajo la representación expresa del Sale Order del TQF, de que lo hacía libre de cargas y gravámenes. Indica Metro que el Sale Order es más específico aun al expresar que Metro Caguas, no responderá por reclamación alguna al amparo de leyes laborales, incluyendo la Ley 80-1976, traspaso de negocio en marcha y antigüedad o acumulación de años de servicio y cita (". . . the transfer of the title of the Assets shall be free and clear of all liens, claims and encumbrances against or with respect to any of the Debtors... including, but not limited to: ...employee seniority accrued while employed with Seller and successorship liability.., any and all liabilities or obligations, union dues, severance obligation." Además, señaló que los querellantes fueron todos notificados del

proceso de quiebras de HIMA pudiendo presentar sus reclamos en el TFQ, incluyendo cualquier reclamo que tuviera que ver con el Sale Order. Para Metro es incuestionable que el Sale Order establece que el TFQ retuvo su jurisdicción exclusiva sobre cualquier controversia relacionada con los aspectos cubiertos bajo este, lo que incluye reclamaciones bajo la Ley 80-1976 y, específicamente, sobre adjudicación de años de servicio con el anterior patrono de los querellantes.

Como segundo error Metro señala que falló el TPI al declarar sin lugar la Moción de Desestimación por Falta de Jurisdicción de conformidad con lo resuelto en *Rodríguez v. Urban Brands*, supra, aun cuando los hechos de dicho caso son distinguibles del presente, por lo que su aplicación es improcedente. Así sostiene que, en dicho caso ante la falta de diligencia del vendedor, quien no notificó a sus empleados de la quiebra, fue que se le impuso responsabilidad al sucesor fundamentándose en que, la falta de notificación adecuada del acreedor impide que la Corte de Quiebras pueda asumir jurisdicción. Por el contrario, arguye que en el caso que nos ocupa los querellantes fueron notificados formalmente de la quiebra durante el proceso y se les envió individualmente a sus direcciones las correspondientes notificaciones informándoles sobre su obligación de radicar cualquier reclamación por mesada, salarios, años de servicio, etc., ante el TQF, no presentando estos ningún reclamo. Para el peticionario cuando el debido proceso de ley de las partes es garantizado, como ha sido aquí, no hay por qué aplicar las doctrinas de traspaso de negocio en marcha y/o patrono sucesor, incluyendo adjudicación de años de servicio, en casos de ventas libres de toda carga y gravamen ante el TFQ, sobre todo cuando así está expresamente dispuesto por el foro.

El peticionario, como tercer error alega que falló el TPI al asumir jurisdicción para conceder un remedio a los querellantes

tomando con consideración años de servicio trabajados con HIMA. Afirma que la doctrina de Traspaso de Negocio en Marcha no aplica en este contexto. Y en situaciones como la que nos ocupa cuando el empleado ha sido despedido con justa causa, como lo es por el cierre de un negocio en quiebra, no existe la protección de Traspaso de Negocio en Marcha. Reitera que concluir que los querellantes, en virtud de la Ley 80-1976, pueden recibir un remedio de Metro, produciría un contrasentido con una Orden y reclamación federal con la que incumplieron y que ocupa el campo. Para Metro la existencia de justa causa de HIMA para concluir sus operaciones ante un cierre en quiebra, lo libera de responsabilidad, además, que sostiene que conforme In re Savage Industries, Inc., 43 F.3d 714, 720 (1 er Circ. 1994), el sucesor de un deudor que se acogió al Capítulo 11 de la Ley de Quiebras Federal, queda absuelto de responsabilidad si los reclamantes no presentaron ninguno de los recursos disponibles bajo un procedimiento de quiebras de Capítulo 11. Así sostiene que permitir que se le reclame los años de servicio de HIMA existiendo una compraventa libre de cargas y gravámenes aprobada por un tribunal de quiebras, implicaría reorganizar el orden de prelación o *priority scheme* establecido por el Código de Quiebras lo cual impactaría la venta de activos a un precio justo.

Como último error, Metro señala que erró el TPI al asumir jurisdicción para conceder un remedio a los querellantes en virtud de las disposiciones de la Ley 80-1976. Sostiene que la Ley 80-1976 está limitada a aquellos empleados que prestan servicios de forma regular, y excluye específicamente a aquellos trabajadores que son despedidos durante su periodo probatorio. En ese sentido, argumenta que de la propia demanda presentada se desprende que los querellantes fueron despedidos durante su periodo probatorio.

Por su parte, los querellantes, primeramente, alegan el carácter sumario del proceso sosteniendo que no están presentes

los criterios para que este foro revise una resolución interlocutoria emitida en un proceso sumario. Segundo, afirman que la controversia ya ha sido resuelta por el Tribunal Supremo de Puerto Rico en el caso de Rodríguez Oquendo vs. Urban Brands, supra y, por este foro, en los casos de Cortés Pacheco v. Marina PDR Operations, LLC, KLAN202300106 (2023) y Arahiza Vázquez Colón y Otros v. Metro Caguas Incorporated (H.N.C. Hospital Pavía Caguas), KLAN202401020 (2024). Puntualizan que en Arahiza Vázquez Colón v. Otros v. Metro Caguas Incorporated, tan reciente como en febrero de 2025, el Tribunal de Apelaciones reiteró la norma de Rodríguez Oquendo v. Urban Brands, supra. En ese caso, la demandada, cuestionó la jurisdicción sobre la materia del TPI sobre una reclamación de despido producto de la misma venta, mismo acuerdo de venta y misma orden de venta del caso marras. Arahiza Vázquez Colón y Otros v. Metro Caguas Incorporated, supra. Para los querellantes en Rodríguez Oquendo vs. Urban Brands, el Tribunal Supremo de Puerto Rico resolvió como doctrina aplicable para Puerto Rico, luego de haber considerado argumentos similares a los de la Recurrente, que la venta de activos como parte de un procedimiento federal de quiebras, aunque sea catalogada como libre de gravámenes (free of liens), no es impedimento para la aplicación de la doctrina de patrono sucesor. En cuanto a los casos señalados como resueltos por este foro, aducen que en Cortés Pacheco v. Marina PDR Operations LLC, un caso no de patrono sucesor sino de traspaso de negocio en marcha, y ante hechos idénticos a los del caso de marras, el Tribunal Apelativo siguiendo la doctrina de Rodríguez Oquendo v. Urban Brands, supra, determinó que en casos en donde la situación es de traspaso de negocio en marcha la venta de activos bajo un procedimiento federal de quiebras, aunque se catalogue como libre de gravámenes (free of liens), no menoscaba la antigüedad ganada por el empleado en el

trabajo con el patrono vendedor. Por último y en apoyo a su postura, señalan que Puerto Rico, como muchos estados de la nación, ha adoptado su postura ante la controversia de sí la figura de la venta de activos libre de gravámenes ("Free and clear of lien") elimina la responsabilidad del patrono sucesor y la antigüedad ganada (en los casos de traspaso de negocio en marcha), siguiendo la norma de más uso por los tribunales. Para los querellantes el hecho de que la normativa sea a nivel estatal, según reiterado en la jurisprudencia, demuestra que la jurisdicción, según surge de estos casos, pertenece al sistema judicial estatal. Ahora bien, si se concluyera que fuese una norma federal, la jurisprudencia ha resuelto reiteradamente que la jurisdicción de las cortes estatales y las de quiebra federal es concurrente, incluyendo específicamente los asuntos relacionados a las órdenes de venta ("Sale Orders") del Tribunal de Quiebras, lo que significaría que habiendo sido radicado el caso primero en el Tribunal de Primera Instancia de Puerto Rico, es a esta corte a la que le corresponde la jurisdicción para dilucidar el caso. Concluye así afirmando que es doctrina asentada en toda la nación, incluyendo en Puerto Rico, que cuando existe jurisdicción concurrente entre el Tribunal Federal y el Tribunal Estatal, el Tribunal Estatal tiene plena facultad para dilucidar todos los aspectos relacionados a la ley estatal y la ley federal. Inclusive sostiene que el TPI tiene la obligación de dilucidar las controversias federales del caso, aunque no quiera pues, el otro efecto de la jurisdicción concurrente es que el caso lo decide el tribunal en donde primero se presenta el caso, el Tribunal de Instancia de Puerto Rico en este caso.

II

*Rodriguez v. Urban Brands, Inc.*, 167 DPR 509 (2006).

En este caso el Tribunal Supremo de Puerto se enfrentó a varias controversias, en lo pertinente, se cuestionó si la venta de activos "libres de gravámenes" ("free of liens") bajo un procedimiento federal de quiebras exceptuaba la aplicación de la *doctrina de patrono sucesor* a una reclamación por despido injustificado. Los hechos del caso eran en apretada síntesis los siguientes. Evelyn Rodríguez Oquendo, empleada de las Tiendas Marianne por más de una década fue despedida y alegó que había sido sustituida en su empleo por una mujer de menor edad que ella. La señora Rodríguez Oquendo presentó una reclamación laboral contra la corporación dueña de las Tiendas Marianne, Petrie Retail Inc. El emplazamiento fue expedido a nombre de Petrie y diligenciado a través de la gerente de una sucursal de las tiendas. Petrie no compareció al juicio por lo que eventualmente se dictó una sentencia en rebeldía condenándolo a pagar cierta cantidad como penalidad por el despido injustificado y, otra, como penalidad por el discrimen por razón de edad. Eventualmente la señora Rodriguez Oquendo solito la ejecución de dicha sentencia que fue llevada a cabo a través del embargo de dos cuentas bancarias. Días después, Urban Brands, Inc., compareció solicitando se dejara sin efecto el embargo referido y que se paralizara la ejecución de la sentencia alegando ser la dueña de las cuentas embargadas. Informó que había comprado a Petrie los activos de las Tiendas Marianne, como parte de un proceso en el Tribunal Federal de Quiebras, sin asumir ningún tipo de deudas de dicha corporación. Incluso sostuvo que la compra fue *libre de gravámenes* ("free of liens"). Alegó, además, que el emplazamiento en cuestión era insuficiente por estar dirigido a Petrie. Y que, aunque el emplazamiento hubiese estado bien diligenciado, la sentencia le fue notificada a Petrie —no a Urban— por lo que no era final y firme, y no procedía su ejecución. Por su parte, la señora Rodriguez Oquendo desconocía que, como parte del proceso de

quiebras, Petrie había transferido los activos de las Tiendas Marianne a Urban diez meses antes del emplazamiento, dos meses después del despido. El foro apelativo revocó el dictamen del Tribunal de Primera Instancia acogiendo los planteamientos de Urban en cuanto a que; (a) la adquisición de activos libre de gravámenes como parte de un proceso de quiebras impedía la aplicación de la doctrina de patrono sucesor, y (b) aun si no hubo impedimento para aplicar la referida doctrina, la prueba presentada había sido insuficiente para demostrar que ésta debía aplicarse en el caso en cuestión. De tal manera también resolvió que Urban no fue debidamente emplazada, por lo que el tribunal nunca adquirió jurisdicción sobre ésta. Inconforme, la señora Rodríguez Oquendo recurrió al Tribunal Supremo quien revocó al foro apelativo y en el proceso definió la controversia. El Tribunal Supremo de Puerto Rico citando a *Piñeiro v. Int'l Air Serv. of P.R., Inc.*, 140 DPR 343 (1996) reconoció que la vertiente jurisprudencial que rehúsa reconocer una limitación a la aplicación de las diferentes doctrinas de responsabilidad del sucesor por el mero hecho de que la venta de activos se dio en el contexto de un proceso de quiebras, no sólo es cónsona con "importantes políticas públicas en el campo laboral, conforme a nuestra realidad económica, social y cultural", sino que disfruta de un mayor respaldo de la jurisprudencia federal y la doctrina en el campo de quiebras. Sin ambages, concluyo que *la venta de activos bajo un procedimiento federal de quiebras, aunque sea libre de gravámenes ("free of liens"), no es impedimento para aplicar la doctrina de patrono sucesor según desarrollada en sus precedentes.*

### Criterios al considerar un recurso de Certiorari

El certiorari es un recurso extraordinario, mediante el cual un foro judicial apelativo puede revisar a su discreción una decisión de

un tribunal recurrido. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction Inc.,* 201 DPR 703, 710 (2019). Aunque la característica principal del recurso de certiorari es su carácter discrecional, tal determinación no es irrestricta, porque está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.

La Regla 52.1 ha sufrido modificaciones desde el año 2009 para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso. La Ley 220-2009 expandió el alcance de la revisión de las resoluciones interlocutorias del Tribunal de Primera Instancia a decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia. Posteriormente, la Ley 177-2010, aumentó nuevamente el marco revisor de las órdenes o resoluciones del Tribunal de Primera Instancia al incluir situaciones excepcionales en casos que revisten el interés público o en los que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así las cosas, en la actualidad, la Regla 52.1 de Procedimiento Civil, *supra,* específicamente dispone que el recurso de certiorari solamente será expedido:

> [p]ara revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar

a la apelación constituiría un fracaso irremediable de la justicia.

Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Ahora bien, acreditada nuestra jurisdicción para expedir el recurso al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* aún debemos auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Tales criterios guían nuestro análisis discrecional sobre la decisión de intervenir con la resolución u orden interlocutoria recurrida. Hemos de enfatizar que nuestro ordenamiento jurídico no favorece la intromisión a destiempo con las resoluciones interlocutorias del foro primario, porque entre otras cosas podrían alterar el manejo diligente de los casos. Así las cosas, la Regla 40, *supra,* dispone que:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Como mencionáramos anteriormente, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción no opera en el vacío y en ausencia de parámetros que la encaminen. El foro apelativo cuenta con los criterios enumerados en dichas reglas para asistirlo y determinar si en un caso en particular procede que se expida el auto discrecional de certiorari. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).

Puntualizamos que, no se favorece la revisión de asuntos interlocutorios en ausencia de los criterios mencionados. *800 Ponce de León Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 175-176 (2020); *IG Builders et al. v. BBVAPR,* supra, pág. 338. El permitir recurrir de las diversas resoluciones dictadas en los procedimientos judiciales que culminaran en una sentencia final, representa un inconveniente para el desenvolvimiento lógico y funcional del proceso, porque interrumpe la marcha ordenada del proceso litigioso. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 730 (2016).

Específicamente en cuanto a la revisión de determinaciones interlocutorias emitidas como parte de un proceso sumario de Ley Núm. 2 del *17 de octubre de 1961, según enmendada,* hemos de tener claro que la normal general, aunque no absoluta, es que no se favorece la revisión mediante recurso de Certiorari de las mismas. Esto responde a la política pública de abreviar el procedimiento sumario laboral de forma que sea lo menos

oneroso posible para el obrero. Tanto la breve exposición de motivos como el historial legislativo de dicha ley destacan, con carácter especial, la naturaleza sumaria del proceso y establecen que el propósito de esta medida legislativa es facilitar la rapidez y celeridad de la resolución de las reclamaciones, propósito al que los tribunales deben dar estricto cumplimiento. *Dávila Rivera v. Antilles Shipping Inc.*, 147 DPR 483, 492 (1999). Por tal razón, la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento y debido a ello, debemos autolimitar nuestra facultad al efecto. Id, pág. 496. Dicha norma solo cederá cuando la resolución interlocutoria que se pretenda impugnar haya sido dictada por el tribunal de primera instancia de forma *ultra vires o* sin jurisdicción. La excepción obedece a que sería injusto requerir que una parte tenga que litigar un caso sin jurisdicción únicamente para cumplir con el requisito de finalidad. Id, página 497-498.

Por último, es pertinente enfatizar que se ha resuelto que el denegar la expedición de un auto de certiorari no constituye una adjudicación en los méritos, sino que "es corolario del ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). La parte afectada con la denegatoria de expedirse el auto de certiorari, tiene a su favor el revisar el dictamen final en el que el foro primario resolvió la causa de acción. *Negrón Placer v. Sec. de Justicia,* 154 DPR 79, 93 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 658 (1997).

IV

Habiendo evaluado los escritos de ambas partes y tomado en consideración la normativa aplicable concluimos que no se

configura alguna de las excepciones a la norma general que limita la revisión interlocutoria en este tipo de pleito sumario, razón por la cual denegamos el recurso.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones