Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XI

| JOSÉ QUILES RETAMAR<br>Apelante<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS y OTROS<br>Apelados | KLAN202300612 | Apelación procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ2021CV00956<br><br>Sobre:<br>Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece José Quiles Retamar (señor Quiles Retamar o parte apelante), solicitando que revoquemos una *Sentencia* emitida el 10 de mayo de 2023, por el Tribunal de Primera Instancia, Sala de San Juan (TPI). Luego de haberse celebrado el juicio en su fondo, el TPI declaró No Ha Lugar la demanda sobre daños y perjuicios presentada por el señor Quiles Retamar contra la Autoridad de Acueductos y Alcantarillados, (AAA o parte apelada).

Juzga el apelante que, a pesar del foro primario haber concluido que la AAA fue la causante del daño alegado, incidió al interpretar la Ley Núm. 79-2002, infra., concediéndole a la apelada una especie de inmunidad no contemplada en dicho estatuto[1]. Además, cuestiona la apreciación que el tribunal *a quo* dio a cierta prueba documental, relativa a la fecha en que fue pavimentada el área alrededor del registro perteneciente a la AAA, causante del daño.

---

[1] Escrito de apelación, pág. 7.

Examinados los asuntos ante nuestra consideración, entre los cuales estuvo el *Alegato de la parte apelada*, determinamos confirmar la *Sentencia* apelada.

## I. Resumen del tracto procesal

El 12 de febrero de 2021, se presentó una demanda por daños y perjuicios contra la AAA[2]. En la demanda se adujo que, el 6 de abril de 2020, el señor Quiles Retamar estaba manejando su bicicleta por la calle Bartolomé de las Casas, en Santurce. Aseveró que, mientras iba bajando por la referida calle en la bicicleta, al ver que un vehículo se disponía a pasarle, le cedió el paso, pasándole por encima a un registro de alcantarilla propiedad de la AAA, que estaba a desnivel, creando un hoyo en la carretera. Fue al pasar por dicha área que sufrió un aparatoso accidente, al ser expulsado de la bicicleta, cayendo en el pavimento. Como resultado de la caída sufrió una serie de daños, por lo cuales tuvo que recibir tratamiento médico, (en la demanda se particularizaron los daños y tratamientos recibidos). Atribuyéndole responsabilidad a la AAA por los hechos narrados, solicitó al foro apelado que ordenara la indemnización correspondiente.

Siendo más específicos, en la demanda se afirmó que, *el accidente antes relatado se debió única y exclusivamente a la culpa y negligencia de la parte demandada,* **al permitir que el registro no estuviera nivelado con la vía de rodaje**[3].

En respuesta, la AAA presentó *Contestación a Demanda*, en la que admitió una de las alegaciones y negó el resto. Además enumeró una serie de defensas afirmativas, de entre las cuales, cabe reproducir las siguientes: que la AAA no es dueña ni tiene responsabilidad por la reparación y el mantenimiento de la calle donde se alegó que ocurrió el accidente; que tales responsabilidades podrían recaer en el Municipio de

---

[2] Apéndice V del recurso de apelación, págs. 34-36.
[3] *Íd*, pág. 35.

San Juan, si se trata de una calle municipal o si éste ha suscrito algún acuerdo con el ELA sobre el particular; que en este caso resultan de aplicación las disposiciones de la Ley Núm. 79 de 9 de junio de 2002, infra.; que en esta Ley la Rama Legislativa de Puerto Rico ordenó al Departamento de Transportación y Obras Públicas que llevase a cabo el levantamiento de registros y alcantarillas al nivel del rodaje, en donde esta no tenga acuerdo con otra dependencia gubernamental para tales fines; la AAA no autorizó o aprobó la repavimentación de la vía pública donde ocurrió el accidente, ni fue la entidad pública que llevó a cabo la misma[4].

Superados varios trámites procesales, y la culminación del periodo de descubrimiento de la prueba, se aprobó el *Informe preliminar entre abogados*, alcanzando las partes varias estipulaciones. Entre tales estipulaciones, destacamos las siguientes; *en el lugar donde la parte demandante alega que había un desnivel u hoyo existe un registro sanitario perteneciente a la AAA; la calle Bartolomé de las Casas, donde ocurrió el accidente alegado por el demandante, pertenece y está bajo la jurisdicción del Municipio Autónomo de San Juan* [5].

Así las cosas, el 5 de mayo de 2023, fue celebrado el juicio en su fondo. La prueba consistió en diez documentos y el testimonio del apelante. Los demás testigos anunciados fueron excusados por acuerdo de las partes.

Concluido el juicio, el 10 de mayo de 2023, el TPI emitió la *Sentencia* cuya revocación nos solicita el apelante, declarando No Ha Lugar la demanda presentada. Luego de enumerar treinta y dos hechos que encontró probados, y exponer el derecho atinente a las causas por daños y perjuicios, junto las disposiciones de la Ley 79-2002, infra, pertinentes, el TPI concluyó que la causa próxima de la caída fue ***el***

---

[4] Apéndice VII el recurso de apelación, págs. 49-53.
[5] Apéndice I del recurso de apelación, pág. 2 y 3.

***desnivel creado alrededor del registro perteneciente a la AAA como consecuencia de la repavimentación de la carretera[6].*** Además, determinó que, por las características observadas en la fotografía del lugar de los hechos, estaba convencido que la repavimentación de dicha área no pudo haberse realizado, en un plazo mayor de 18 años. Por tanto, y, aludiendo a la Ley Núm. 79-2002, infra, **la AAA no tenía un deber jurídico de actuar para corregir el desnivel creado en la repavimentación alrededor de la alcantarilla, condición peligrosa que constituyó la causa próxima de la caída y los daños sufridos**.

Insatisfecho, el señor Quiles Retamar instó *Moción Sobre Reconsideración* ante el TPI, que fue denegada.

Es así como el señor Quiles Retamar acude ante nosotros, mediante recurso de apelación, esgrimiendo dos señalamientos de error, que transcribimos a continuación:

> Primer señalamiento de error: Erró el Tribunal de Primera Instancia en su interpretación de estatutos legislativos, lo que llevó a conceder inmunidad a la parte demandada-apelada, liberándola de responsabilidad.

> Segundo señalamiento de error: Erró el Tribunal de Primera Instancia al emitir una determinación sobre periodos de [tiempo] en específico en que se realizaron trabajos basados en una foto, aun existiendo evidencia en contrario, a los fines de poder aplicar la ley para conceder inmunidad a la AAA.

En respuesta, el 14 de agosto de 2023, la AAA presentó *Alegato de la Parte Apelada,* oponiéndose a los argumentos alzados por el señor Quiles Retamar para solicitar la revocación de la *Sentencia* apelada. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

---

[6] *Íd*, pág. 12

## II. Exposición de Derecho

### A. *Sobre la apreciación de la prueba por el Tribunal de Apelaciones*

La fase apelativa está caracterizada por la norma de deferencia judicial que le corresponde mostrar a este foro intermedio examinar al ejercicio sobre la apreciación de la prueba que efectúa el tribunal *a quo*. Esta norma parte de la premisa de que es el foro primario el que está en mejor posición para evaluar y adjudicar la credibilidad de los testigos, pues tuvo la oportunidad de escuchar y ver declarar los testigos. *Rivera Torres v. Díaz López*, 207 DPR 636, 658 (2021); *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 136 (2004). Después de todo, el "foro apelativo cuenta solamente con récords mudos e inexpresivos", de aquí el respeto a la adjudicación de credibilidad realizada por el foro primario. *Rivera Torres v. Díaz López*, supra; *SLG Rivera Carrasquillo v. AAA*, supra. Véase, además, *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984).

A tenor con lo dicho, los foros apelativos no deben intervenir con la apreciación de la prueba realizada por el Tribunal de Primera Instancia, a menos que se demuestre que medió pasión, prejuicio, parcialidad o error manifiesto del foro primario. *Rivera Torres v. Díaz López*, supra; *Sucn. Rosado v. Acevedo Marrero*, supra; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753-754 (2013); *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012); *SLG Rivera Carrasquillo v. AAA*, supra; *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006).

Tan solo podríamos intervenir con la apreciación de la prueba, cuando de un examen detenido de la misma quedemos convencidos de que el juzgador descartó injustificadamente elementos probatorios importantes o que fundamentó su criterio únicamente en testimonios de

escaso valor, o inherentemente improbables o increíbles. *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972); *Pueblo v. Luciano Arroyo*, 83 DPR 573, 581 (1961).

### B. Los daños y perjuicios extracontractuales

El Art. 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5141,[7] dispone que la persona que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Por ello, para imponer responsabilidad civil al amparo del mencionado artículo, es necesaria la concurrencia de los siguientes requisitos: (1) realidad del daño sufrido; (2) un acto u omisión culposo o negligente; y, (3) nexo causal entre el daño y la referida acción culposa o negligente. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *López v. Porrata Doria*, 169 DPR 135, 161 (2006); *Rivera v. S.L.G. Díaz*, 265 DPR 408, 421 (2005).

En el ámbito de las acciones extracontractuales, el concepto de daños ha sido definido como *aquel menoscabo material o moral que sufre una persona, causado en contravención de una norma jurídica, y por el cual ha de responder a otra. Nieves Díaz v. González Massas*, supra, pág. 845; *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 817 (2009); *López v. Porrata Doria*, supra, pág. 151. De otro lado, se ha dispuesto que la culpa o negligencia supone la falta del debido cuidado, que a su vez consiste en no anticipar y prever probables consecuencias de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Nieves Díaz v. González Massas*, supra, pág. 844; *Rivera v. S.L.G. Díaz*, supra; *López v. Porrata Doria*, supra, citando a *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997); *Valle v. E.L.A.*, 157 DPR 1, 18 (2002).

---

[7] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por se la ley vigente y aplicable a la controversia que nos ocupa.

Con respecto a la relación causal, se ha dicho que la misma supone *un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico*, por lo que es un componente vital en una reclamación de daños y perjuicios. *Nieves Díaz v. González Massas*, supra, págs. 844-45; *Rivera v. S.L.G. Díaz*, supra, pág. 422.

A la luz de lo anterior, para que en nuestro ordenamiento jurídico prospere una causa de acción por daños y perjuicios, la parte demandante debe demostrar la realidad del daño sufrido, la existencia de un acto u omisión negligente y el elemento de causalidad. Cabe destacar que el nexo causal entre el daño sufrido y el acto negligente no se debe establecer a base de meras conjeturas o especulaciones. *Rodríguez Crespo v. Hernández*, 121 DPR 639, 650 (1988); *Sáez v. Municipio de Ponce*, 84 DPR 535 (1962).

Por último, cabe recordar que el estándar de prueba que requieren los casos de daños y perjuicios está previsto en la Regla 110 (F) de las Reglas de Evidencia, 32 LPRA Ap. IV., R. 110 (F). Según lo dispuesto en la Regla aludida, en los casos civiles, la decisión del juzgador se hará mediante la preponderancia de prueba a base de criterios de probabilidad, a menos que exista disposición al contrario. (Énfasis provisto). A lo que se debe añadir que, según las Reglas 110(a) y (b) de Evidencia, 32 LPRA Ap. IV, Reglas 110(a) y (b), en lo pertinente, el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia, y la obligación de presentar primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

### C. *Ley para el levantamiento de registros y alcantarillas al nivel de rodaje*

La Ley Núm. 79-2002, según enmendada, conocida como la *Ley para el levantamiento de registros y alcantarillas al nivel del rodaje*, 9 LPRA sec. 2201, reconoce en su *Exposición de Motivos* el problema con *las carreteras afectadas por registros y parrillas de alcantarillas que se*

*encuentran por debajo del nivel de rodaje, **situación que es provocada por continuos trabajos de repavimentación que realizan agencias estatales y municipales en las vías públicas del país***. (Énfasis provisto). Continúa indicando el mismo texto, que ***la práctica ha sido la de repavimentar, sin tener en cuenta la acumulación de capas de asfalto que, poco a poco, van dejando los registros y alcantarillas a niveles tan bajos que literalmente se pueden catalogar de hoyos artificiales***.

La Ley Núm. 79-2002 fue posteriormente enmendada por la Ley Núm. 149-2008, en cuya *Exposición de Motivos* el Legislador dejó plasmado lo siguiente:

> Las agencias encargadas del mantenimiento de las vías de rodaje reconocen que el deterioro de las mismas se debe a las deficiencias de los trabajos de pavimentación y bacheo. Además, los trabajos de la Autoridad de Acueductos y Alcantarillados ("AAA") y una insuficiencia de presupuesto y mano de obra, también han sido señalados como las causas que abonan al problema. Como si lo anterior fuese poco, los conductores y transeúntes, también tiene que soportar que **cuando se realizan los trabajos de repavimentación no se nivelan las alcantarillas al nivel del rodaje**. Claro está, **ello provoca accidentes, caídas y más daños a los vehículos**. En vista de lo anterior, la Asamblea Legislativa reconoce la necesidad de aprobar esta medida con el fin de **requerirle a las agencias gubernamentales, los gobiernos municipales y contratistas la inclusión de una cláusula en todo contrato que disponga que toda tapa de registros o alcantarilla que se encuentre en una vía de tránsito a ser asfaltada sea elevada al nivel de rodaje**. De esta manera, abonamos a la solución de un problema que asfixia al ciudadano.
>
> (Énfasis provisto).

Por último, la Sección 2 de la Ley Núm. 149-2008 citada, dispone como sigue:

> **Toda agencia gubernamental, instrumentalidades públicas, los gobiernos municipales y contratistas** verificarán que toda tapa de registro, alcantarilla, tapas de válvulas de la Autoridad de Acueducto y Alcantarillado y otros elementos que forman parte de la infraestructura eléctrica, telefónica y de Cable TV que se encuentre en una vía de tránsito a ser asfaltada, **sea elevada al nivel de rodaje**.

> Todo contrato suscrito por una agencia gubernamental, instrumentalidades públicas, los gobiernos municipales y contratistas deberá incluir una cláusula en que disponga que el contratista viene obligado a cumplir con las exigencias de esta Ley y que no se le desembolsará el diez (10) por ciento retenido de la obra hasta que se certifique su cumplimiento. 9 LPRA §2201. (Énfasis provisto).

**III. Aplicación del Derecho a los hechos**

Los dos señalamientos de error esgrimidos por la parte apelante son susceptibles de discusión conjunta, y así obraremos.

Adelantamos en la introducción que el apelante sostiene que el TPI erró al determinar que, aunque la AAA fue la causante de los daños de la parte demandante-apelante, incidió al interpretar que no debía responder, creando una especie de inmunidad que no está contemplada en la ley (Ley Núm. 79-2002), ni surge de la intención legislativa[8]. Como explicaremos, esta premisa no se ajusta a lo decidido por el foro apelado.

Iniciamos por establecer que, contrario a lo afirmado por el apelante, el TPI **no** determinó que la AAA fuera la causante del daño alegado, sino que, citando a dicho foro, *la causa próxima de la caída fue **el desnivel creado alrededor del registro propiedad de la AAA <u>como consecuencia de la repavimentación de la carretera</u>**[9]*. (Énfasis y subrayado provistos). Obsérvese que, en la afirmación del TPI reproducida, la mención de la AAA fue al único efecto de que era el propietario del referido registro, nada más. Tal determinación del foro apelado revela, que: (1) había un desnivel alrededor del registro propiedad de la AAA (donde ocurrió el accidente), y; (2) tal defecto fue como consecuencia de la repavimentación de la carretera. Ello, en modo alguno permite llegar a la conclusión de que la repavimentación que causó el desnivel descrito fuera efectuada o llevada a cabo por la AAA

De lo anterior se sigue que, si la causa del desnivel fue la repavimentación efectuada alrededor del registro de la AAA, el

---

[8] Recurso de apelación, pág. 7.
[9] Apéndice I del recurso de apelación, pág. 12.

promovente de la acción judicial tenía que haber desfilado prueba sobre a cargo de quién estuvo la repavimentación que provocó la condición peligrosa, pero el apelante no lo hizo. En este sentido, según la prueba documental y testifical aquilatada por el foro primario, el apelante no logró establecer que la repavimentación aludida estuviera a cargo de la AAA, ni que esta fuera responsable de mantener el lugar nivelado, y de aquí que concluyera que no era la responsable por los daños alegados en la demanda. Como queda visto, el dictamen del tribunal *a quo* no contiene, ni puede ser interpretado, como una concesión de inmunidad a la AAA en el contexto discutido.

Además, el razonamiento expuesto por el tribunal *a quo* en la *Sentencia* apelada, se encuentra en perfecta armonía con el propósito y articulado plasmado por el Legislador en la Ley Núm. 79-2002, supra. Según subrayamos, en la *Exposición de Motivos* de la referida ley se reconoció que los hoyos que provocan los desniveles en el asfalto alrededor de los registros de la AAA, son un problema para el tránsito vehicular en Puerto Rico. Sin embargo, el mismo Legislador identificó como causa del problema, que *la práctica ha sido la de repavimentar, sin tener en cuenta la acumulación de capas de asfalto que, poco a poco, van dejando los registros y alcantarillas a niveles tan bajos que literalmente se pueden catalogar de hoyos artificiales.* Es decir, el problema del desnivel en el asfalto alrededor de los registros de la AAA no es atribuible a esta, por el solo hecho de ser propietaria del registro, sino de las agencias públicas, municipales o contratistas que repavimentan alrededor de estos y causan el desnivel aludido, sin nivelarlo. A estos efectos con gran claridad se dispuso que el fin de aprobar la Ley Núm. 79-2002, supra, fue el de requerirle a **las agencias gubernamentales, los gobiernos municipales y contratistas** la inclusión de una cláusula en todo contrato que disponga **que toda tapa de registros o alcantarilla que se**

**encuentre en una vía de tránsito a ser asfaltada, sea elevada al nivel de rodaje**.

Aunque reiteremos, por causa de lo hasta aquí explicado sobre la Ley Núm. 79-2002, resulta evidente que el Legislador identificó a las agencias públicas, municipios y contratistas que repavimentan alrededor de un registro de la AAA, y añaden las capas de asfalto que causan desniveles, como las responsables de nivelarlas para evitar las condiciones peligrosas al tránsito vehicular. Por tanto, **no** recae en la AAA nivelar el asfalto alrededor de sus registros, **causados por la repavimentación de otras agencias, municipios o contratistas**, pues de esto la Ley Núm. 79-2002 hace responsable a la entidad o persona que repavimentó y causó el desnivel, sin luego nivelar.

Lo anterior en modo, alguno supone la concesión de una *inmunidad* hacia la AAA, contrario sugiere el apelante. Ello, en tanto resulta plausible que la AAA lleve a cabo alguna labor de repavimentación alrededor de uno de sus registros, que cause un desnivel peligroso y, de no corregirlo, produzca daño a un vehículo, en cuyo caso, sí cabría una causa de acción en su contra. Sin embargo, esa **no** fue la situación fáctica en este caso, pues **el apelante no logró no demostrar que el desnivel en el asfalto respecto al registro fuera atribuible a alguna acción de la AAA**.

Además, aunque en las determinaciones de hecho quedó constatado que la AAA no tiene un sistema de inspección o supervisión en el área donde ocurre el accidente, ello, no aporta prueba alguna que sirva para establecer que esta llevara a cabo alguna actividad alrededor del registro donde ocurrieron los hechos, causante del desnivel en el asfalto que provocó la caída del apelante. De nuevo, la Ley Núm. 79-2002, *supra*, reconoce la responsabilidad de las agencias, municipios y contratistas **que asfaltan** alrededor de los registros, y no lo nivelan,

como causantes de los accidentes vehiculares. No hubo prueba de que el registro de la AAA presentara alguna peligrosidad, pero sí la hubo sobre el desnivel entre la carretera y el registro, siendo las capas de asfalto las causantes del desnivel. Además, las partes estipularon que el Municipio de San Juan tenía bajo su responsabilidad el mantenimiento de dicha calle, pero no fue traído como parte demandada.

Por último, no nos persuade el apelante cuando arguye que incidió el foro apelado en su interpretación de una foto que mostraba el estado en que se encontraba el registro, y el asfalto a su alrededor, al momento de los hechos. Nos parece evidente que el dictamen del TPI no estuvo basado solo en la interpretación que hizo de la foto aludida, sino en el conjunto de la prueba testifical y documental que tuvo ante su consideración, y de la cual no surgía la responsabilidad de la AAA respecto al desnivel en el asfalto alrededor del registro. Sobre ello, repetimos: el mantenimiento de la calle donde ocurrió el accidente recaía en el Municipio de San Juan, hecho que fue estipulado; la Sra. Pizarro Santiago, profesional de apoyo técnico de la AAA, inspeccionó el lugar donde ocurrieron los hechos, y **no detectó ninguna deficiencia en el registro**, pero **observó varias capas de asfalto alrededor de este**; el señor Juan Cotto, supervisor del área de operaciones de la AAA para San Juan tenía a su cargo para la fecha de los hechos la atención de cualquier querella y reparar cualquier desperfecto, pero no había recibido alguna querella respecto al referido registro, **ni tampoco tenía conocimiento de alguna obra o reparación realizada allí por la AAA** Estas determinaciones de hechos del TPI **no** han sido controvertidas en manera alguna por el apelante ante nosotros, a pesar de que tienden a demostrar que el registro no tenía desperfectos, y las condiciones del asfalto alrededor del registro no eran responsabilidad de la AAA.

Además, el apelante sostiene que la foto aludida fue tomada pasado un año de ocurrido el accidente. Sin embargo, en su Alegato ante la AAA aseveró que el apelante había declarado en el juicio que las condiciones existentes en el lugar de los hechos eran iguales a las imágenes que surgían de las fotos. Visto que la parte apelante no incluyó junto a su recurso de apelación alguno de los medios de reproducción de la prueba testifical, nos vemos impedidos de sopesar si, en efecto, el apelante manifestó que la foto reflejaba las condiciones del lugar tal como a la fecha en que ocurrió el accidente. Los tribunales apelativos no deben intervenir con la apreciación de la prueba oral, cuando no se tiene forma de evaluar la evidencia presentada debido a que la parte promovente no elevó una transcripción o una exposición narrativa de la prueba. *Graciani Rodríguez v. Garge Isla Verde, LLC*, 202 DPR 117 (2019).

Finalmente, el apelante arguye que la prueba documental admitida como evidencia constató que no se habían realizado trabajos de repavimentación o bacheo en la calle donde se encontraba el registro, previo a que ocurriera el accidente. A partir de lo cual concluye, que la para demandada-apelada no pudo demostrar que se realizaron trabajos posteriores a la aprobación de la Ley Núm. 79-2002[10].

Al así exponer, el apelante subvierte el peso de la prueba que correspondía asumir a cada parte en el pleito, en tanto juzga que le correspondía a AAA demostrar el hecho alegado. Según la Regla 110(a) y (b) de Evidencia, *supra,* es en la parte promovente de la causa de acción en quien reside el peso de probar el asunto en controversia. Por tanto, correspondía al apelante probar que la AAA creó las condiciones de peligrosidad que dieron lugar al desafortunado accidente en bicicleta descrito, pero no logró ante el TPI, y tampoco apreciamos los supuestos

---

[10] Recurso de apelación, pág. 13.

que nos colocan en posición de intervenir con la apreciación de la prueba hecha por el foro apelado[11]. A fin de cuentas, solo podríamos intervenir con la apreciación de la prueba cuando de un examen detenido de la misma quedáramos convencidos de que el juzgador descartó injustificadamente elementos probatorios importantes o que fundamentó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles. *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972); *Pueblo v. Luciano Arroyo*, 83 DPR 573, 581 (1961). Ninguna de las tales acontece en este caso.

En definitiva, sobre este punto, no tenemos elementos suficientes para revertir la determinación del TPI en su juicio de probabilidad, de que era probable que se hubiese repavimentado la carretera posterior al año 2002, pero antes del 2011. De nuevo, para que en nuestro ordenamiento jurídico prospere una causa de acción por daños y perjuicios, se requiere establecer mediante preponderancia de la prueba, la existencia de un acto u omisión negligente, objetivo que no logró cumplirse en este caso.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, se Confirma la *Sentencia* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. La jueza Lebrón Nieves concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[11] No pasa inadvertido que la Certificación suscrita por el Supervisor del Subprograma de repavimentación del Municipio de San Juan de vías, comprende el periodo entre el 14 de septiembre de 2011 y el 7 de diciembre de 2016, aunque refleja la inexistencia de obras de reparación o bacheo, hay un periodo de posterior a la aprobación de la Ley Núm. 79-2007, en el 2002 y anterior al 2011, que no fue incluido en la certificación, y en el que pudo haberse asfaltado la carretera.