Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL V**

| AIDA M. ALVERIO ROSA AMY LEE GONZÁLEZ DÍAZ **Recurridas** V. METRO CAGUAS INCORPORATED **Peticionaria** | KLCE20250277 | ***CERTIORARI*** Procedente del Tribunal de Primera Instancia, Sala de Caguas Caso Núm. CG2024CV04498 Sobre: Despido Injustificado Procedimiento Sumario (Ley2 de 1961) |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de mayo de 2025.

El 20 de marzo de 2025, Metro Caguas Incorporated (Metro Caguas o peticionaria) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revocación de una *Resolución Interlocutoria* que se dictó el 7 de marzo de 2025 y se notificó el 10 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación por Falta de Jurisdicción* que presentó la peticionaria al amparo de la Sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, mejor conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3120 (Ley Núm. 2).

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

### I.

El 26 de diciembre de 2024, la Sra. Aida M. Alverio Rosa (señora Alverio Rosa) y la Sra. Amy Lee González Díaz (señora

González Díaz) (en conjunto, las recurridas) presentaron una *Querella Enmendada* sobre despido injustificado al amparo de la Ley Núm. 2, *supra*, en contra de Metro Caguas.[1]  En primer lugar, explicaron que, el 14 de agosto de 2023, todas las corporaciones que componían el grupo HIMA, incluyendo CMT y Grupo HIMA San Pablo, Inc. se acogieron al Capítulo 11 de la Ley de Quiebras, 11 USCA sec. 101 *et seq.* en el Tribunal de Quiebras para el Distrito de Puerto Rico.  Sostuvieron que, en o alrededor del 14 de noviembre de 2023, durante el proceso de quiebra, Metro Caguas adquirió el hospital HIMA San Pablo Caguas y las corporaciones que la componían.  Expresaron que, luego de la adquisición por parte de Metro Caguas éstas fueron retenidas como empleadas, pero que el 5 y 6 de febrero de 2024, respectivamente, fueron despedidas sin justa causa.

Argumentaron que, cuando la adquiriente de una entidad optaba por retener los servicios de todos o algunos de sus empleados y adviniera en consecuencia patrono de éstos, se les acreditaría a estos empleados el tiempo que llevaban trabajando en el negocio bajo anteriores dueños para el efecto del cómputo de mesada y el cálculo de la antigüedad en caso de que los empleados fuesen despedidos injustificadamente. Puntualizaron que, en el presente caso, el despido de ellas fue aproximadamente cuarenta y cinco (45) días de haberse despedido a los empleados que no se retuvieron luego de la venta y aproximadamente sesenta (60) días desde que Metro Caguas comenzó a operar el hospital.  Así pues, razonaron que, en virtud de la doctrina de traspaso de negocio en marcha, le correspondía a Metro Caguas pagarle la mesada acreditando los años de servicio con el anterior dueño e incluyendo la antigüedad al momento del despido.

---

[1] Véase, págs. 10-15 del apéndice del recurso.

Por otro lado, alegaron que, para sostener la validez del despido, Metro Caguas alegó una presunta reorganización o reestructuración. Sin embargo, afirmaron que, no se dio ninguna reorganización *bona fide* que justificara el despido, ya que no existía una situación económica sustancial que atentara contra la continuación de la empresa y que obligara a tomar medidas de reducción. Así pues, concluyeron que el despido fue injustificado y no se les pagó la indemnización por concepto de mesada a la cual tenían derecho. En vista de ello, la señora Alverio Rosa reclamó una mesada de aproximadamente $140,390.40 y la señora González Díaz una mesada de aproximadamente $23,722.

En respuesta, el 7 de enero de 2025, Metro Caguas presentó una *Contestación a Querella Enmendada*.[2] En primer lugar, alegó que a las recurridas no les aplicaba las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a (Ley Núm.80) toda vez que su empleo con Metro Caguas concluyó durante su periodo probatorio. Por otro lado, argumentó que, la doctrina de patrono sucesor no aplicaba en este caso por las siguientes razones: (1) en virtud de las órdenes emitidas por el Tribunal de Quiebras Federal en la compraventa de HIMA y (2) porque no se cumplía con el requisito de umbral de aplicación de la doctrina, a saber, la existencia de una reclamación fundamentada en un acto u obligación contraída por el patrono sucesor, en este caso, HIMA, que pudiese ser oponible ante el nuevo patrono, en este caso, Metro Caguas. Puntualizó que el Tribunal Federal de Quiebras estableció como condición de la compraventa que Metro Caguas no tendría la obligación de responder por la mesada, ni por los años de servicio

---

[2] Íd., págs. 17-32.

de empleados despedidos por HIMA y que fue dentro de esas condiciones que Metro Caguas adquirió ciertos activos del negocio.

Argumentó que, en la alternativa, aun cuando las recurridas no estuviesen en periodo probatorio al momento de sus despidos, lo cual negó, la decisión de Metro Caguas de cesantearlas no se fundamentó en razones legalmente prohibidas ni en el mero arbitrio o capricho del patrono. Indicó que, las razones para el despido eran legítimas y justificadas, en cumplimiento con la Ley Núm. 80, *supra*, dirigidas a preservar y proteger la adecuada marcha de las operaciones y bienestar de la institución. Por último, resaltó que el Tribunal de Quiebras era el foro con jurisdicción exclusiva para determinar si a Metro Caguas le aplicaba la figura de patrono sucesor y/o de traspaso de negocio en marcha o si tenía que responder por los años de servicios que las recurridas rindieron a HIMA. Por esta razón, solicitó la desestimación del caso por falta de jurisdicción. Cabe precisar que, como parte de sus defensas afirmativas, la recurrida incluyó la defensa de falta de jurisdicción sobre la materia, entre otras.

Así las cosas, el 31 de enero de 2025, la peticionaria presentó una *Moción de Desestimación por Falta de Jurisdicción*.[3] En primer lugar, alegó que, las recurridas fueron despedidas por el hospital HIMA de Caguas como parte del cierre de negocios en un proceso de quiebras. Explicó que, consiente de su obligación con los empleados que despidió el 19 de diciembre de 2023, el hospital HIMA presentó ante el Tribunal Federal de Quiebras una solicitud para que dicho foro fijara un término límite para las radicaciones de reclamaciones de sus acreedores. Sostuvo que, el Tribunal de Quiebras declaró Ha Lugar la solicitud y fijó la fecha del 18 de abril de 2024, como fecha límite para que cualquier persona pudiese radicar las reclamaciones

---

[3] Íd., págs. 33-56.

que tuviese contra HIMA, que hubiesen surgido antes del 31 de enero de 2024, como son las acciones de las querellantes por sus mesadas. Afirmó que, las recurridas fueron notificadas de su derecho a presentar cualquier reclamación que tuviesen en contra de HIMA en el foro de quiebras. Sin embargo, puntualizó que, a pesar de su conocimiento sobre el proceso, las recurridas no presentaron reclamación en contra de HIMA.

En virtud de lo anterior, reiteró que, el TPI carecía de jurisdicción sobre la materia y no tenía competencia para interpretar, atender y adjudicar las reclamaciones de acción de traspaso de negocio en marcha y/o patrono sucesor, incluyendo la aplicación de años de servicio con anteriores patronos para efectos de inflar el pago de la mesada. Insistió que era el Tribunal de Quiebras el foro con jurisdicción para atender dicho asunto. Concluyó que, luego de que el Tribunal de Quiebras atendiera la controversia, lo que restaba era determinar si la terminación del periodo probatorio de empleo de las recurridas con Metro Caguas fue injustificada o en violación al Art. 3 de la Ley Núm. 80, *supra.* Sin embargo, argumentó que no procedía la mesada solicitada por las recurridas por estar en un periodo probatorio al momento de su despido. Por las razones antes expuestas solicitaron la desestimación de la *Querella Enmendada.*

En respuesta, el 27 de febrero de 2025, las recurridas presentaron su *Oposición a Moción de Desestimación y a Moción de Paralización.*[4] En lo pertinente, señalaron que, la controversia del caso de autos estaba resuelta por el Tribunal Supremo en el caso

---

[4] Íd., págs. 368-400. Cabe precisar que, la parte peticionaria presentó una *Solicitud de Paralización de los Procedimientos* mediante la cual le solicitó al TPI la paralización de los procedimientos hasta tanto resolviera la solicitud de desestimación relacionada a la falta de jurisdicción sobre la materia y campo ocupado. Es por ello, que la oposición de la solicitud de desestimación que presentaron las recurridas también discute su oposición a la moción de paralización. Sin embargo, no estaremos en dicha discusión por no ser pertinente al recurso ante nos.

*Rodríguez v. Urban Brands,* 167 DPR 509 (2006), y por el Tribunal de Apelaciones (TA) en el caso núm. KLAN202300106 de *Cortés Pacheco v. Marina PDR Operations, LLC.* Particularmente, sostuvo que en el caso de *Rodríguez Oquendo v. Urban Brands*, *supra,* el Tribunal Supremo resolvió que, la venta de activos bajo un procedimiento federal de quiebras, aunque sea catalogado como libre de gravámenes, no es impedimento para la aplicación de la doctrina de patrono sucesor. Por otro lado, puntualizó que en el caso que atendió el TA antes citado, dicho foro aplicó la doctrina del referido caso del Tribunal Supremo y resolvió que, la venta de activos bajo un procedimiento federal de quiebras, aunque se catalogue como libre de gravámenes, no menoscaba la antigüedad ganada por el empleado en el trabajo por el patrono vendedor.

En vista de lo antes expuesto, concluyó que, la norma adoptada en Puerto Rico y que sirve de guía para el presente caso es que un acuerdo y/o orden del Tribunal de Quiebras no puede eliminar la responsabilidad del sucesor ni la antigüedad ganada por el empleado. Así pues, razonó que, por ser un asunto estatal, la jurisdicción le correspondía al TPI.

Evaluados los escritos de ambas partes, el 7 de marzo de 2025, el TPI emitió una *Resolución Interlocutoria* declarando No Ha Lugar la *Moción de Desestimación por Falta de Jurisdicción* que presentó la peticionaria al amparo de la Sección 3 de la Ley Núm. 2, *supra.*[5] Inconforme con este dictamen, el 20 de marzo de 2025, la recurrida presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Primera Instancia al declarar sin lugar la Moción de Desestimación por Falta de Jurisdicción de Metro Caguas, de conformidad con la Sección 3 de la Ley 2-1961.**
>
> **Erró el Honorable Tribunal de Primera Instancia al asumir jurisdicción para atender la controversia de**

---

[5] Íd., pág. 1072.

**autos, en la medida en que el campo está ocupado por el Tribunal de Quiebras Federal.**

**Erró el Honorable Tribunal de Primera Instancia al asumir jurisdicción para conceder un remedio a la parte recurrida-querellante tomando con consideración años de servicios trabajados con HIMA.**

**Erró el Honorable Tribunal de Primera Instancia al asumir jurisdicción para conceder un remedio a la parte recurrida-querellante, en virtud de las disposiciones de la Ley 80-1976.**

Atendido el recurso, el 20 de marzo de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 2 de abril de 2025 para presentar su postura en cuanto al recurso. Oportunamente, la señora Alverio Rosa y la señora González Díaz presentaron su *Moción de Desestimación y Oposición a que se Expida el Auto de Certiorari* y negaron que el TPI cometiera los errores que Metro Caguas le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. Veamos.

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción.

Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra,* pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

La Ley Núm. 2, *supra,* estableció un procedimiento sumario para la adjudicación de pleitos laborales. El objetivo de dicho proceso es "proveer un mecanismo procesal judicial que logre la rápida consideración y adjudicación de las querellas presentadas por los obreros o empleados, principalmente en casos de reclamaciones salariales y beneficios". *Rodríguez Gómez v. Multinational Ins.,* 207 DPR 540, 569 (2021) citando a: *Rivera v. Insular Wire Products Corp.,* 140 DPR 912, 923 (1996). Esta estructura es el medio primordial "para la implantación de la política pública del Estado de proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para la subsistencia de éste y de su familia, en la etapa de transición entre empleos". Íd. *Izagas Santos v. Family Drug Center,* 182 DPR 463, 480 (2011).

Ahora bien, en *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723 (2016), nuestro Tribunal Supremo puntualizó que, en *Dávila, Rivera v. Antilles Shipping, Inc.,* 147 DPR 483 (1999), se establecieron los criterios restrictivos para revisar, vía *certiorari,* las

determinaciones interlocutorias emitidas en pleitos incoados bajo el procedimiento sumario de la Ley Núm. 2, *supra*. En el mencionado caso el referido foro concluyó que la revisión de resoluciones interlocutorias era contraria al carácter sumario del procedimiento laboral. Íd., pág. 496. Sin embargo, el Tribunal Supremo apuntó que esta norma no era absoluta. Íd., pág. 498. Ello, ya que se exceptuaban aquellas resoluciones dictadas por un tribunal sin jurisdicción y aquellos casos extremos en los cuales los fines de la justicia así lo requieran. Íd. Específicamente, nuestro más alto foro manifestó que procedía la revisión inmediata cuando se dispondría del caso en forma definitiva o cuando tuviese el efecto de evitar una grave injusticia. Íd.

**III.**

De un análisis detenido del expediente surge que, la determinación por la cual el peticionario recurre ante nos no constituye ninguna de las excepciones que nos permitirían intervenir con dicho dictamen interlocutorio. Es decir, la decisión de la cual se recurre ante nos no refleja un escenario de falta de jurisdicción y tampoco surge la situación de que con nuestra intervención se dispondrá del caso en forma definitiva, o que nuestra intervención tenga el efecto de evitar una grave injusticia.

Por otra parte, luego de examinar los argumentos esgrimidos por la parte peticionaria a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido. Ello, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de

derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones