Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| AHIRA M. LIZARDI BUONOMO ZORAIDA ORTIZ DE JESÚS<br><br>Apelantes<br><br>Vs.<br><br>METRO CAGUAS INCORPORATE, H/N/C HOSPITAL PAVÍA CAGUAS<br><br>Apelado | KLAN202500508 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CG2024CV04103<br><br>Sala: 802<br><br>Sobre: DESPIDO INJUSTIFICADO PROCEDIMIENTO SUMARIO (LEY 2 DE 1961) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparecen Ahira M. Lizardi Buonomo (en adelante, señora Lizardi Buonomo) y Zoraida Ortiz de Jesús (en adelante, señora Ortiz de Jesús) (en conjunto, parte apelante), mediante un recurso de *Apelación,* para solicitarnos la revisión de una *Sentencia* emitida el 23 de mayo de 2025, y notificada el 27 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).[1] Allí, el TPI desestimó con perjuicio la *Querella* presentada por la parte apelante en contra de Metro Caguas Incorporated, h/n/c Hospital Pavía Caguas (en adelante, Metro Caguas o parte apelada) por falta de jurisdicción sobre la persona y sobre la materia.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia* apelada.

---
[1] Apéndice de la *Apelación,* a las págs. 576-594; Entrada SUMAC 41.

Número Identificador

SEN2025 _____

**-I-**

El presente caso tiene su génesis el 1 de noviembre de 2024, cuando la parte apelante instó una *Querella* al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, mejor conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3118 *et seq.* (en adelante, Ley Núm. 2), en contra de la parte apelada por alegado despido injustificado.[2]

En síntesis, adujo que la señora Lizardi Buonomo y la señora Ortiz de Jesús eran empleadas del hospital HIMA San Pablo Caguas (en adelante, HIMA). Asimismo, alegó que el 14 de agosto de 2023, HIMA presentó una petición de quiebras bajo el Capítulo 11 del Código de Quiebras, 11 USC sec. 101 *et seq.* en el Tribunal de Quiebras de Estados Unidos para el Distrito de Puerto Rico. En adición, alegó que la parte apelante, dentro del proceso de quiebras, compró, libre de gravámenes, los activos de HIMA, la cual continuó operando ininterrumpidamente luego de la adquisición.

Asimismo, arguyó que la señora Lizardi Buonomo comenzó a trabajar en el Hospital San Rafael en el año 1983. No obstante, cinco (5) años después, dicha entidad hospitalaria fue adquirida por HIMA, a donde la señora Lizardi Buonomo fue transferida y trabajó por treinta y cinco (35) años como secretaria ejecutiva. Atestiguó que fue despedida por HIMA el 22 de diciembre de 2023. De otro lado, aseveró que la señora Ortiz de Jesús comenzó a laborar en HIMA el 26 de mayo de 1993 como secretaria ejecutiva y, eventualmente, fue ascendida a asistente legal. Posteriormente, el 3 de noviembre de 2023, fue despedida por HIMA.

La parte apelante sostiene que la señora Lizardi Buonomo y la señora Ortiz de Jesús siempre tuvieron evaluaciones excelentes y, al momento de sus respectivos despidos, eran empleadas

---

[2] Apéndice de la *Apelación*, a las págs. 1-5. Entrada 1 SUMAC.

permanentes de HIMA. Además, esgrimió que HIMA retuvo secretarias ejecutivas de menor antigüedad que ambas, y que los despidos fueron injustificados. Igualmente, que Metro Caguas, al adquirir a HIMA, responde por las actuaciones ilegales de ésta bajo la doctrina de patrono sucesor, la cual, según esgrime, no está exceptuada por la venta de activos libre de gravámenes dentro de un procedimiento de quiebras.

El 4 de febrero de 2025, la parte apelante presentó una *Solicitud de Anotación de Rebeldía.*[3] Allí, sostuvo que, el 15 de enero de 2025, Metro Caguas fue emplazada personalmente. Asimismo, señaló que la parte apelada tenía un término de quince (15) días para presentar su alegación responsiva, ya que la causa de acción fue instada bajo el procedimiento sumario provisto por la Ley Núm. 2. Toda vez que Metro Caguas no había comparecido, solicitó la anotación de rebeldía y que se concedieran los remedios solicitados en la *Querella.* Así las cosas, el 4 de febrero de 2025, el foro *a quo* dictó una *Orden* en la que declaró *Ha lugar* la solicitud y anotó la rebeldía de la parte apelada.[4] En adición, ordenó a la parte apelante a presentar el cómputo de la mesada correspondiente a cada querellante dentro del término de diez (10) días. Ante ello, el 10 de febrero de 2025, la parte apelante presentó una *Moción en Cumplimiento de Orden – Cómputo de Mesada* en la que cumplimentó con la referida orden.[5]

Así las cosas, el 11 de febrero de 2025, ambas partes produjeron sendas mociones.

Primeramente, Metro Caguas presentó una *Moción de Desestimación por Falta de Jurisdicción.*[6] En esencia, y sin someterse a la jurisdicción del foro primario, adujo que éste carecía de

---

[3] Apéndice de la *Apelación*, a las págs. 9-11; Entrada 4 SUMAC.
[4] Apéndice de la *Apelación*, a la pág. 13; Entrada 6 SUMAC. Notificada el 5 de febrero de 2025.
[5] Apéndice de la *Apelación*, a las págs. 14-16; Entrada 7 SUMAC.
[6] Apéndice de la *Apelación*, a las págs. 17-428; Entrada 8 SUMAC.

jurisdicción sobre la materia para entender la causa de acción incoada. Planteó que aun operaba la paralización automática del proceso de quiebras toda vez que éste aún se ventilaba en el foro federal. En adición, que era de aplicación la doctrina de campo ocupado ya que la orden judicial federal en la que se aprobó la compraventa libre de gravámenes dispone que Metro Caguas no asumiría las responsabilidades de HIMA, incluyendo los pagos de mesada y que, de igual modo, la antedicha orden excluye la aplicación de la doctrina de patrono sucesor.[7]

Igualmente, esgrimió que el Tribunal de Quiebras retuvo jurisdicción exclusiva para atender toda reclamación relacionada con la transferencia de activos. Asimismo, señaló que, si bien el Tribunal Supremo aplicó la doctrina de patrono sucesor en *Rodríguez v. Urban Brands*, 167 DPR 509 (2006), un caso de transferencia de activos durante un proceso de quiebras, ello se dio en unas circunstancias distinguibles al presente caso. Particularmente, en que, en aquel caso, los empleados no habían sido notificados del procedimiento de quiebras, mientras que, en el presente, se notificó a todos los empleados de HIMA de dicho proceso.

Igualmente, que la orden judicial federal en aquel caso no excluyó la doctrina de patrono sucesor ni especificó que el Tribunal de Quiebras retendría la jurisdicción exclusiva sobre cualquier

---

[7] Específicamente, la orden federal indica que:

> Neither METRO CAGUAS INCORPORATED nor its designees, successors, assigns or transferees, shall be o be deemed to be a successor in interest or responsible person or potentially responsible person to Debtors or any current or former creditor, equity holder or other party in interest with respect to any liability or interest, and none shall have any liability (whether under federal or state law or the laws of the Commonwealth of Puerto Rico or otherwise) for successor liability, including, without limitation, with respect to any liabilities or interests arising from or under products liability, tax, environmental, employment or other laws and statutes of the United States, and any of its states, territories or possessions, including the Commonwealth of Puerto Rico.

> Apéndice de la *Apelación*, pág. 99.

asunto resultante del proceso. Por último, adujo que HIMA era una parte indispensable cuya ausencia, igualmente, privaba al foro *a quo* de jurisdicción.

En segundo lugar, la parte apelada presentó una *Moción Solicitando la Descalificación de la Representación Legal de las Partes Querellantes*.[8] Allí, alegó que los abogados de la parte apelante habían sido representantes legales de HIMA y que uno de ellos fue empleado y accionista de la institución hospitalaria e incluso compareció como acreedor al proceso de quiebras de HIMA.

También, presentó una *Moción Solicitando se Levante la Anotación de Rebeldía, ante la Inaplicabilidad de la Ley 2-1961*.[9] En esta, arguyó que no procedía el trámite sumario provisto por la Ley Núm. 2 ya que este no es aplicable a los casos en los que las partes no hay una relación obrero-patronal y, en el presente caso, la parte apelante nunca fue empleada de Metro Caguas. Por consiguiente, según esgrimió, el presente caso debía tramitarse por la vía ordinaria toda vez que la parte apelante no poseía legitimación activa para invocar la Ley Núm. 2 y, siendo así, no podía mantenerse la anotación de rebeldía en virtud de una pieza legislativa inaplicable.

A tales efectos, la parte apelante presentó una *Moción para que [s]e Declare No Ha Lugar de su Faz la Solicitud de Desestimación*.[10] En síntesis, sostuvo que el TPI no tenía discreción para considerar la solicitud de la parte apelada por ésta haber sido tardía. Resaltó que Metro Caguas presentó sus defensas doce (12) días de vencido el plazo que tenía disponible para presentarlas.

Asimismo, la parte apelada presentó dos solicitudes de paralización de procedimientos.[11] En éstas, reiteró sus planteamientos sobre la falta de jurisdicción sobre la materia y

---

[8] Apéndice de la *Apelación*, págs. 430-455; Entrada 10 SUMAC.
[9] Apéndice de la *Apelación*, págs. 456-467; Entrada 11 SUMAC.
[10] Apéndice de la *Apelación*, págs. 468-471; Entrada 12 SUMAC.
[11] Apéndice de la *Apelación*, págs. 472-485; Entradas 13 y 14 SUMAC.

añadió que el foro de instancia, igualmente, carecía de jurisdicción sobre la persona.

En primer lugar, señaló que el emplazamiento no se diligenció en el centro de trabajo, donde, por regla general, la Ley Núm. 2 requiere que el emplazamiento se le entregue al patrono. En segundo lugar, que el emplazamiento se entregó en una oficina en Guaynabo, a una persona que no es agente residente de Metro Caguas ni estaba autorizada para recibir emplazamientos a nombre de ésta. En tercera instancia, arguyó que el contenido del emplazamiento era incorrecto e inducía a error por cuanto indicaba que la parte apelada tenía diez (10) días para contestar la *Querella*, a pesar de que la Ley Núm. 2 era inaplicable y de que el emplazamiento se entregó en un distrito judicial distinto a aquel en el que se promovió el reclamo, en cuyo caso, aplicaba el término de quince (15) días. Consecuentemente, solicitó que se paralizaran los procedimientos hasta tanto se resolvieran las mociones dispositivas presentadas.

El 12 de febrero de 2025, Metro Caguas presentó una *Solicitud de Desestimación por Falta de Jurisdicción sobre la Persona de Metro Caguas y para que se Levante Anotación de Rebeldía.*[12] Además de reiterar los planteamientos que ya había esbozado, añadió que la *Querella* era insuficiente y adolecía de alegaciones que justificaran la concesión de un remedio. Expuso que únicamente cuando se determina la actuación ilegal de un patrono, es que se activa la necesidad de analizar la aplicación de la doctrina de patrono sucesor. Especificó que la *Querella* no detalló que HIMA incurrió en una conducta o acto ilegal, por lo cual no procedía imponerle responsabilidad a Metro Caguas.

El 13 de febrero de 2025, la parte apelante presentó una *Moción de Desglose y para Fijar Posición Sobre Algu[n]os Asuntos.*[13]

---

[12] Apéndice de la *Apelación*, págs. 486-522; Entrada 15 SUMAC.
[13] Apéndice de la *Apelación*, págs. 523-525; Entrada 16 SUMAC.

Esencialmente, reiteró que el foro primario carecía de discreción para levantar la rebeldía anotada a la parte apelada y considerar sus escritos, por lo que solicitó que se declararan no ha lugar y se ordenara su desglose.

Cabe destacar que, el 18 de febrero de 2025, Metro Caguas presentó una petición de *certiorari* ante esta Curia con el alfanumérico KLCE202500166 para revisar la orden del TPI en la que se anotó su rebeldía.[14] Dicho recurso, mediante *Resolución*, fue desestimado por este Tribunal el 24 de febrero de 2025, por falta de jurisdicción. Ello por cuanto resolvimos que, si bien la parte apelada arguyó que el foro *a quo* carecía de jurisdicción *in personam* y sobre la materia, dichas cuestiones jurisdiccionales aún se encontraban *sub judice* ante el TPI.[15]

El 3 de marzo de 2025, la parte apelante presentó una *Oposición a "Moción de Desestimación por Falta de Jurisdicción."*[16] Allí, recalcó que la parte apelada se encontraba en rebeldía y que el foro primario tenía el deber de cumplir cabalmente con la Ley Núm. 2. En adición, señaló que Metro Caguas renunció a presentar las defensas afirmativas que esbozó en sus escritos y que el Tribunal Supremo de Puerto Rico no le reconoce al Tribunal de Quiebras la autoridad de imponer limitaciones a la aplicación de la doctrina de patrono sucesor por ésta ser un asunto de derecho estatal. Por tanto, la orden judicial federal no excluía la antedicha doctrina en el presente caso. Asimismo, sobre la alegada falta de parte indispensable, señaló que, en virtud de la doctrina de patrono sucesor, la parte apelada sustituyó a HIMA y asumió las obligaciones de esta última, por lo que no se lesionaban sus derechos.

---

[14] Entrada 23 SUMAC.
[15] Entrada 39 SUMAC.
[16] Apéndice de la *Apelación,* págs. 532-542; Entrada 27 SUMAC.

El 6 de marzo de 2025, Metro Caguas presentó una *Breve Réplica a Oposición a Moción de Desestimación por Falta de Jurisdicción sobre la Materia (SUMAC 27)*.[17] Esencialmente, reiteró que el defecto en el emplazamiento privó al TPI de jurisdicción sobre la persona de Metro Caguas y, con ello, de imponer un remedio al palio de la Ley Núm. 2.

El 10 de marzo de 2025, la parte apelante presentó una *Oposición a "Solicitud de Desestimación por Falta de Jurisdicción sobre la Persona de Metro Caguas y para que se Levante la Anotación de Rebeldía.*[18] En síntesis, planteó que en los otros casos en los que se ventilaban asuntos similares en contra de Metro Caguas, el emplazamiento se diligenció también en las oficinas de Guaynabo y ello no se cuestionó. Además, sostuvo que, en el presente caso, se diligenció el emplazamiento en el departamento legal de la parte apelada, lo que constituyó un lugar válido bajo la Ley Núm. 2.

Por otro lado, esgrimió que quien recibió el emplazamiento, estaba en una posición de suficiente responsabilidad como para que una persona razonable presuma que transmitirá el emplazamiento a sus superiores. Asimismo, señaló que en los otros casos se emplazó a Metro Caguas a través de la misma persona y ello tampoco se cuestionó. En cuanto al error en el emplazamiento sobre el término para presentar una alegación responsiva, expresó que, aunque indicaba un término de diez (10) días, con el diligenciamiento en las oficinas de Guaynabo, la parte apelada se benefició de un plazo adicional.

Ante ello, Metro Caguas presentó una *Réplica a "Oposición a 'Solicitud de Desestimación por Falta de Jurisdicción sobre la Persona de Metro Caguas y para que se Levante la Anotación de Rebeldía.'"*[19]

---

[17] Entrada SUMAC 29.
[18] Apéndice de la *Apelación*, págs. 543-553; Entrada SUMAC 30.
[19] Entrada SUMAC 32.

En síntesis, esgrimió que no le corresponde al foro *a quo* evaluar si, en otros casos, Metro Caguas renunció a sus derechos, sino que, si en el presente caso, se cumplió con el debido emplazamiento según lo exige la Ley Núm. 2. Igualmente, recalcó que el error en el emplazamiento del plazo para comparecer provocó su nulidad.

El 23 de mayo de 2025, el TPI dictó *Sentencia*.[20] Allí, el foro primario concluyó que la parte apelada tenía razón en cuanto a la falta de jurisdicción *in personam* y sobre la materia. Expuso que el emplazamiento entregado en Guaynabo, y no en la institución hospitalaria en Caguas, resultó defectuoso al proveer un término incorrecto de diez (10) y no de quince (15) días, conforme lo exige la Ley Núm. 2. Resolvió que dicho defecto incumplió con el propósito de informar adecuadamente del plazo dentro del cual Metro Caguas debía comparecer ante el TPI, y ello no era susceptible de ser subsanado. Siendo así, determinó que no adquirió jurisdicción sobre la persona de la parte apelada.

En adición, adjudicó que la orden judicial emitida por el Tribunal de Quiebras claramente disponía que dicho foro judicial retuvo la jurisdicción para interpretar asuntos relacionados con la transferencia de activos y excluyó la doctrina de patrono sucesor y la figura de negocio en marcha. Entendió que la parte apelante no planteó una justificación suficiente para trastocar el caudal administrado por el foro judicial federal, el cual constituye campo ocupado. Finalmente, sostuvo que el hecho de haberle anotado la rebeldía a Metro Caguas no significaba que no podía desestimar el pleito toda vez que, al no contar con jurisdicción desde el inicio del caso, la anotación de rebeldía no tuvo efecto jurídico alguno. Consecuentemente, desestimó con perjuicio la *Querella* incoada.

---

[20] Apéndice de la *Apelación*, págs. 576-594; Entrada SUMAC 41. Notificada el 27 de mayo de 2025.

Inconforme, la parte apelante acude ante nos mediante el presente recurso e imputa al TPI la comisión de los siguientes errores:

> **Primer error:** Erró el Tribunal de Primera Instancia al concluir que carecía de jurisdicción sobre la persona de la Apelada.

> **Segundo error:** Erró el Tribunal de Primera Instancia al desestimar la Querella por falta de jurisdicción sobre la materia, al interpretar incorrectamente el alcance de la Orden de Venta de la Corte de Quiebras y al no aplicar o distinguir erróneamente la norma establecida en *Rodríguez Oquendo v. Urban Brands*, 167 DPR 509 (2006), y la jurisprudencia persuasiva aplicable, incluyendo la Sentencia del Tribunal de Apelaciones en *Arahiza Vázquez Colón v. Metro Caguas Incorporated*, KLAN202401020 (TA PR 20 de febrero de 2025), referente a la doctrina de patrono sucesor en casos de ventas de activos en procesos de quiebra.

Por su parte, el 30 de junio de 2025, Metro Caguas compareció mediante *Alegato de la Parte Apelada y Solicitud de Desestimación por Falta de Perfeccionamiento, a tenor con la Regla 16(E).* Es preciso destacar que, además de plantear sus argumentos sobre los méritos del caso, la parte apelada arguye que esta Curia carece de jurisdicción para atender el presente recurso por falta de perfeccionamiento. Sostiene que la parte apelante no incluyó en el apéndice del recurso el emplazamiento según fue expedido por la Secretaría del TPI, el cual entiende que constituye un documento relevante para disponer del recurso, conforme a la Regla 16(E) del Reglamento del Tribunal de Apelaciones, *infra.*

Con el beneficio de la comparecencia de ambas partes, procederemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable al caso.

-*II*-

-*A*-

Nuestro Más Alto Foro judicial ha expuesto que los tribunales tenemos siempre la obligación de ser celosos guardianes de nuestra propia jurisdicción, pues sin jurisdicción no estamos autorizados a

entrar a resolver los méritos de un caso. *Shell v. Srio. Hacienda*, 187 DPR 109, 122-123 (2012); *Cordero et al. v. ARPe et al.*, 187 DPR 445, 457 (2012); *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

Como es sabido, la jurisdicción es "el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes." *MCS Advantage, Inc. v. Fossas Blanco et al.*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020).

Puntualizamos que, "[l]as cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo". *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003). Ante ello, el tribunal debe desestimar la reclamación sin entrar en los méritos del caso. *González Santos v. Bourns P.R., Inc.*, 125 DPR 48, 63 (1989).

El Tribunal Supremo ha definido la jurisdicción sobre la materia como "la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal." *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 395 (2022). Por tanto, cuando no hay jurisdicción sobre la materia, el tribunal carece de autoridad y poder para entender en el asunto. Ello es así por cuanto "[l]a Jurisdicción no puede ser otorgada por las partes y el tribunal tampoco puede abrogársela. Sólo el Estado, a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal." *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 709 (2014).

Asimismo, ha reiterado que la falta de jurisdicción sobre la materia tiene las siguientes consecuencias: (1) no es susceptible de

ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *MCS Advantage, Inc. v. Fossas Blanco et al., supra,* pág. 145.

La Regla 10 de Procedimiento Civil, *supra*, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas siendo: (1) una moción de desestimación; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1; *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043,1065 (2020).

Específicamente, la Regla 10.2 de las de Procedimiento Civil, *supra*, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla.

Esta moción se basará en al menos uno de los siguientes fundamentos: **(1) la falta de jurisdicción sobre la materia** o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento; (4) insuficiencia del emplazamiento del diligenciamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2 (5).

La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo,

se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra,* pág. 1066. (énfasis suplido).

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security Police, Inc. v. Dorado,* 211 DPR 70, 84 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa,* 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

Cuando se solicita la desestimación por falta de jurisdicción sobre la materia, el Tribunal Supremo expresó que los tribunales vienen obligados a desestimar una reclamación cuando esta sea de la jurisdicción exclusiva de una agencia administrativa o de la esfera federal. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009) (citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 4ta ed., San Juan, LexisNexis, sec. 2601, pág. 234.

### -*B*-

El Código de Quiebras de Estados Unidos, en su sección 362 (a), 11 USC sec. 362, establece la figura de la paralización automática de cualquier litigio de un deudor que haya presentado una petición al amparo del referido Código. *BPPR v. SLG Gómez-López,* 213 DPR 314, 329-330 (2023).

Pertinentemente, establece que:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.]

11 USC sec. 362.

Siendo así, por virtud de la sección 362 del Código de Quiebras, queda paralizado de manera inmediata y automática el inicio o la continuación de todo litigio judicial o administrativo que pueda afectar el control de la propiedad del quebrado. Ello tiene la consecuencia de proteger al deudor de aquellas reclamaciones que sus acreedores instaron previo a la petición de quiebra y de proteger a los acreedores de las reclamaciones de otros acreedores. *Requena Mercado et als. v. Policía de PR*, 205 DPR 285, 291 (2020).

Ello comienza con la presentación de la petición de quiebra sin requerir de una notificación formar para surtir efecto y, consecuentemente, los tribunales estatales quedan privados de

jurisdicción durante la vigencia de la paralización bajo el Tribunal de Quiebras. *BPPR v. SLG Gómez-López, supra,* pág. 330.

Por regla general, los tribunales estatales tienen jurisdicción concurrente con los tribunales federales para atender asuntos que surjan al amparo de la Constitución y leyes federales. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 856 (2009) (citando a *Tafflin v. Levitt,* 493 US 455 (1990).

No obstante, cuando el Congreso lo haya dispuesto así, o cuando surja claramente de la ley la intención de privar a los foros estatales de atender un asunto de materia federal, la jurisdicción será exclusiva de los tribunales federales. *Íd.*

Así, el Congreso puede ocupar el campo en un asunto federal y excluir la regulación estatal. *Íd.* Cabe señalar que el fin de la doctrina del campo ocupado es evitar conflictos regulatorios y fomentar una política uniforme. *Íd.* Nótese que las complicaciones jurisdiccionales bajo la doctrina de campo ocupado tienen dos (2) vertientes. Primeramente, la vertiente legislativa comprende quién tiene la facultar para regular, mediante ley, una materia o asunto. Por otro lado, la vertiente judicial trata sobre cuál foro judicial, el estatal o el federal, tiene la autoridad para considerar los asuntos incoados. *Íd.,* (citando a *Rodríguez v. Overseas Military,* 160 DPR 270, 279 (2009).

### -III-

En el recurso ante nos, la parte apelante esbozó dos (2) errores que, según entiende, cometió el foro primario. Específicamente, sostiene que el TPI incidió al resolver que carecía de jurisdicción sobre la materia y sobre la persona de la parte apelada. No le asiste la razón. *Veamos.*

De entrada, como cuestión de umbral, debemos justipreciar si el foro de instancia tiene jurisdicción sobre la materia o si el presente asunto se trata de campo ocupado. Adelantamos que el

campo está ocupado por el foro federal, por lo que es inmeritorio atender el error sobre la jurisdicción *in personam.*

En el presente caso, subsiste una paralización automática por el procedimiento federal ante el Tribunal de Quiebras, quien mantiene ocupado el campo. Lo anterior impide a la parte apelante entablar una reclamación de cualquier índole en contra de Metro Caguas fuera del foro federal.

Si bien es cierto que, en *Rodríguez v. Urban Brands, supra,* nuestro Tribunal Supremo estableció que "la venta de activos bajo un procedimiento federal de quiebras, aunque se libre de gravámenes ('free of liens'), no es impedimento para aplicar la doctrina de patrono sucesor según desarrollada por nuestros precedentes," es menester distinguir que, en aquel caso, el Más Alto Foro judicial se pronunció en el contexto de un acreedor que no fue debidamente notificado por el patrono anterior de su petición de quiebra. En adición, en la orden judicial federal en *Rodríguez v. Urban Brands, supra,* el Tribunal de Quiebras no indicó si se reservó o no la jurisdicción para atender las controversias relacionadas a la orden de transferencia de activos.

En el presente caso, la parte apelante fue notificada, mediante un edicto publicado el 31 de agosto de 2023, en el periódico *The San Juan Daily Star,* de que HIMA se acogió al Capítulo 11 del Código de Quiebras.[21] En particular, excluyó la aplicación de la doctrina de patrono sucesor cuando expresó que:

> The transfer of the title of the Assets shall be free and clear of all liens, claims and encumbrances against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets, including, but not limited to: ... (d) claims, debts, encumbrances, obligations, liabilities, demands, actions, suits... (iv) any rights under labor or employment agreements... (vi) any liabilities of Debtors for any present or former employees, officers, directors, members, retirees, independent contractors or consultants of Debtors, including, without limitation, any liabilities associated with any claims for... severance, retention, termination, severance, or other payments... arising out of or in

---

[21] Entrada 8 SUMAC, Anejo 3.

connection with any and all claims, arbitration awards, judgments, litigation or legal proceedings (whether instituted prior to or after the Closing) of any employee or employees (whether hired by METRO CAGUAS INCORPORATED or not), for any severance liability, reinstatement, back pay liability, debts, termination, failure to notify, failure to bargain, negligent or willful acts, errors, omissions, breach of contract, breach of Stipulation, breach of Collective Bargaining Agreement, misconduct, termination, employee seniority accrued while employed with Seller and successorship liability... any and all liabilities or obligations, union dues, severance obligations, (including without limitation any and all penalties, fines, settlements, interests, costs or expenses, back pay, damages, under any local, state, federal or Commonwealth of Puerto Rico labor and employment laws, (including without limitation: any and all claims under... unjust dismissal under Act No. 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.*[22]

Asimismo, el foro federal indicó que:

Neither METRO CAGUAS INCORPORATED nor its designees, successors, assigns or transferees, shall be o be deemed to be a successor in interest or responsible person or potentially responsible person to Debtors or any current or former creditor, equity holder or other party in interest with respect to any liability or interest, and none shall have any liability (whether under federal or state law or the laws of the Commonwealth of Puerto Rico or otherwise) for successor liability, including, without limitation, with respect to any liabilities or interests arising from or under products liability, tax, environmental, employment or other laws and statutes of the United States, and any of its states, territories or possessions, including the Commonwealth of Puerto Rico.[23]

Además, el foro federal se reservó expresamente la jurisdicción para atender cualquier controversia relacionada con la transferencia de activos.

Sobre esto, señaló el Tribunal de Quiebras lo siguiente:

The Court shall retain exclusive jurisdiction to interpret, construe and enforce the provisions in the Sale Order and the Asset Purchase Agreement, in all respects and, further, to hear and determine any and all disputes or claims arising under or related to the Sale and transfer of the Assets, the corresponding Closing documents, or the Purchasers' and the Parties' involvement, negotiation, or participation under any of the corresponding Closing documents, except that any agreements, issues, or disputes related to the Medicare program or programs administered by HRSA shall be governed exclusively by the applicable Federal statutes, regulations, rules and procedures, without regard to the Bankruptcy Code or Bankruptcy Rules.[24]

Nótese, además, que el Tribunal de Quiebras fijó el 18 de abril de 2024 como la fecha límite para incoar ante el referido foro

---

[22] Entrada 8 SUMAC, Anejo 2, págs. 6-9.
[23] *Íd.*, págs. 14-15.
[24] Entrada 8 SUMAC, Anejo 2, pág. 25.

cualquier reclamación en contra de HIMA que hubiese surgido en o antes del 31 de enero de 2024. En particular, dispuso:

> Except as otherwise provided herein, each person or entity, including, without limitation, individuals, partnerships, corporations, joint ventures, trusts and governmental units, that holds or wishes to assert an administrative expense claim pursuant to Section 503(b) of the Bankruptcy Code (each, an "**Administrative Expense Claim**") against the Debtors' estates, which claim arose during the period from the Petition Date through and including January 31, 2024, must file a request for allowance of such Administrative Expense Claim (a "**Payment Request**"), substantially in the form attached hereto, no later than 4:00 p.m. (ET) on the date that is thirty (30) days after the entry of this Order[.][25]

Como vimos, en el presente caso, la señora Lizardi Buonomo fue despedida el 22 de diciembre de 2023, y la señora Ortiz de Jesús, el 3 de noviembre de 2023. Consecuentemente, su reclamo surgió en o antes del 31 de enero de 2024. Cónsono con la orden judicial del Tribunal de Quiebras, la parte apelante tenía hasta el 18 de abril de 2024 para presentar su reclamo en contra de HIMA.

Toda vez que presentaron la *Querella* en el presente asunto el 1 de noviembre de 2024, procede desestimar la presente causa de acción por falta de jurisdicción sobre la materia. Según expusimos, el Tribunal de Quiebras ocupa el campo y se mantiene en vigor la paralización automática que impide la presentación de litigios estatales en contra de la parte apelada relacionados a la transferencia de activos.

En virtud de lo antes expuesto, y ante la falta de jurisdicción sobre la materia, prescindimos de revisar el señalamiento de error sobre falta de jurisdicción *in personam*.

### -IV-

Por los fundamentos que anteceden, los cuales hacemos formar parte de este dictamen, **confirmamos** la *Sentencia* apelada.

---

[25] *Íd.,* Anejo 6, pág. 3.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones